ACCEPTED
14-15-00285-CR
FOURTEENTH COURT OF APPEALS
HOUSTON, TEXAS
12/23/2015 10:46:03 AM
CHRISTOPHER PRINE
CLERK

## NO. 14-15-00285-CR

# IN THE FOURTEENTH COURT OF APPEALS

FILED IN
14th COURT OF APPEALS
HOUSTON, TEXAS
12/23/2015 10:46:03 AM
CHRISTOPHER A. PRINE
Clerk

# HOUSTON, TEXAS

---

## DAVID RUIZ, APPELLANT
## V.
## THE STATE OF TEXAS, APPELLEE

---

# BRIEF FOR THE STATE OF TEXAS

---

## CAUSE NUMBER 11CR1921
## IN THE 212th JUDICIAL DISTRICT COURT
## OF GALVESTON COUNTY, TEXAS

---

ATTORNEYS FOR THE STATE OF TEXAS

REBECCA KLAREN          ASSISTANT CRIMINAL DISTRICT ATTORNEY
                        STATE BAR NO.  24046225


JACK ROADY              CRIMINAL DISTRICT ATTORNEY


600 59TH STREET, SUITE 1001
GALVESTON TX 77551
(409) 770-6004, FAX (409) 621-7952
rebecca.klaren@co.galveston.tx.us


**ORAL ARGUMENT WAIVED**

## IDENTITY OF PARTIES AND COUNSEL

| | |
|---|---|
| Presiding Judge | Honorable Patricia Grady |
| Appellant | David Ruiz |
| Appellee | The State of Texas |
| Attorney for Appellant | Chabli Hall |
| (Trial Only) | Houston, Texas |
| Attorney for Appellant | Kyle Verret |
| (Appeal Only) | Galveston, Texas |
| Attorney for State | T. Matthew Heermans & |
| | Richard Hayes |
| (Trial Only) | Galveston, Texas |
| Attorney for State | Rebecca Klaren |
| (Appeal Only) | Galveston, Texas |

# TABLE OF CONTENTS

**SECTION**                                                                          **PAGE**

Identity of Parties and Counsel                                                          ii

Table of Contents                                                                       iii

Index of Authorities                                                                     v

Summary of the Argument                                                                  2

Statement of Facts                                                                       3

First Issue                                                                             28

> Counsel showed the State's witnesses knew Ruiz was an abuse victim. She also showed they were unaware of Ruiz's head injury. Counsel presented evidence, through Ruiz, that he was sexually abused and suffered a head injury that may've impacted his ability to do probation.
>
> How was counsel deficient when she presented mitigating evidence?
>
> How was Ruiz prejudiced when the same judge set his punishment and would've known if cumulative mitigating evidence would've changed its sentence?

Argument and Authorities                                                                28

I.   Motion for New Trial Standard of Review                                           29

II.  Ineffective Assistance of Counsel Relevant Law                                    30

III. Trial Counsel Was Not Deficient                                                   33

IV.  Ruiz Was Not Prejudiced                                                           37

V.   Conclusion—Ruiz Is Not Entitled To A New Punishment Hearing                       42

Second Issue     43

A court must hold a hearing on a motion for new trial if the motion raises matters that aren't determinable from the record and establishes reasonable grounds showing that the defendant could be entitled to relief.

What's the abuse of discretion in denying a new trial hearing when the record shows counsel wasn't deficient and the judge who received the motion also set the punishment? The judge knew if the affidavits would've changed her sentence.

Argument and Authorities     43

I.     Motion for New Trial Hearing Relevant Law     44

II.     The Trial Court Did Not Abuse Its Discretion By Denying A Hearing On Ruiz's Motion For New Trial     45

Conclusion and Prayer     49

Certificate of Service     50

Certificate of Compliance     50

# INDEX OF AUTHORITIES

## CASES

*Ansari v. State*, 06-14-00220-CR, 2015 WL 7300073, at \*2 (Tex. App.---Texarkana Nov. 13, 2015, no. pet. h. ..............................................................................................34

*Arriaga v. State,* 335 S.W.3d 331, 336-37 (Tex. App.---Houston [14th Dist.] 2010, pet. ref'd)................................................................................................................ 40, 42, 47

*Bone v. State,* 77 S.W.3d 828, 833, 835 (Tex. Crim. App. 2002). ...................................32

*Cannon v. State,* 252 S.W.3d 342, 348-49 (Tex. Crim. App. 2008).......................... 30, 42

*Castaneda v. State*, 01-14-00389-CR, 01-14-00390-CR, 2015 WL 6930466 \*9 (Tex. App.---Houston [1st Dist.] Nov. 10, 2015, no pet. h.) .......................... 33, 40, 42, 47

*Coble v. Quarterman,* 496 F.3d 430, 437 (5th Cir. 2007) ...............................................39

*Eddie v. State,* 100 S.W.3d 437, 442 (Tex. App.---Texarkana 2003, pet. ref'd) .............34

*Ex parte Martinez,* 195 S.W.3d 713, 731 (Tex. Crim. App. 2006)..................................39

*Ex parte Welborn,* 785 S.W.2d 391, 393 (Tex. Crim. App. 1990)...................................32

*Ex parte Wheeler,* 203 S.W.3d 317, 325-26 (Tex. Crim. App. 2006) .............................40

*Frangias v. State*, 450 S.W.3d 125 (Tex. Crim. App. 2013) .................................... 35, 36

*Gholson v. State*, 5 S.W.3d 266, 273 (Tex. App.---Houston [14th Dist.] 1999, pet. ref'd). ................................................................................................................................31

*Glenn v. State*, 01-13-00640-CR, 2015 WL 831995, at \*4 (Tex. App.—Houston [1st Dist.] Feb. 26, 2015, pet. ref'd) .................................................................... 40, 42, 47

*Goody v. State*, 433 S.W.3d 74, 81 (Tex. App.---Houston [1st Dist.] 2014, pet. ref'd)........ .................................................................................................................... 40, 42, 47

*Harrington v. Richter,* 562 U.S. 86, 112 (2011).............................................................33

*Hobbs v. State,* 298 S.W.3d 193, 199 (Tex. Crim. App. 2009)................................ 44, 48

*Holden v. State*, 201 S.W.3d 761, 763 (Tex. Crim. App. 2006)............................... 44, 48

*Holland v. State,* 761 S.W.2d 307, 319 (Tex. Crim. App. 1988) ....................................39

*Ketchum v. State,* 199 S.W.3d 581, 597 (Tex. App.----Corpus Christi 2006, pet. ref'd) ..39

*Lair v. State*, 265 S.W.3d 580, 595 (Tex. App.---Houston [1st Dist.] 2008, pet. ref'd) ..32

*Lewis v. State*, 448 S.W.3d 138, 146 (Tex. App.---Houston [14th Dist.] 2015, pet. ref'd) ................................................................................................41

*Lopez v. State*, 462 S.W.3d 180, 188 (Tex. App.---Houston [1st Dist. 2015, no pet.) ........ ................................................................................ 33, 35, 37, 47

*Lucero v. State,* 246 S.W.3d 86, 94 (Tex. Crim. App. 2008). ..........................................44

*Mallet v. State,* 9 S.W.3d 856, 868 (Tex. App.---Fort Worth 2000, no pet.)........... 30, 32

*Perez v. State,* 310 S.W.3d 890, 892-93 (Tex. Crim. App. 2010) ....................... 30, 32, 42

*Potts v. State,* No. 14–10–01172–CR, 2012 WL 1380230, at *1 (Tex. App.---Houston [14th Dist.] Apr. 19, 2012, no pet.) ............................................................ 40, 42, 47

*Reyes v. State,* 849 S.W.2d 812, 816 (Tex. Crim. App. 1993) ........................................44

*Riley v. State,* 378 S.W.3d 453, 457 (Tex. Crim. App. 2012)............................ 29, 30, 42

*Rylander v. State,* 101 S.W.3d 107, 110 (Tex. Crim. App. 2003) ............................ 30, 37

*Scaggs v. State,* 18 S.W.3d 277, 281 (Tex. App.---Austin 2000, pet. ref d)....................44

*Shanklin v. State*, 190 S.W.3d 154, 165 (Tex. App.---Houston [1st Dist.] 2005, pet. dism'd) .............................................................. 33, 35, 37, 40, 41, 47

*Smith v. State,* 286 S.W.3d 333, 344-45 (Tex. Crim. App. 2009) ...................................... .......................................................... 33, 39, 40, 41, 42, 44, 45, 47, 48

*State of Texas ex rel. Vance v. Clawson,* 465 S.W.2d 164, 168 (Tex. Crim. App. 1971) ....41

*Strickland v. Washington,* 466 U.S. 668, 687 (1984) .............................. 30, 31, 32, 33, 42

*Thompson v. State,* 9 S.W.3d 808, 812 (Tex. Crim. App. 1999)................................ 31, 32

*Toupal v. State,* 926 S.W.2d 606, 608 (Tex. App.---Texarkana 1996, no pet.) ...............34

*Washington v. State*, 417 S.W.3d 713, 728 (Tex. App.---Houston [14th Dist.] 2013, pet. ref'd)........................................................................................................................39

*Wiggins v. Smith*, 539 U.S. 510, 534, 536 (2003) ........................................................32

*Williams v. State,* 301 S.W.3d 675, 687 (Tex. Crim. App. 2009) ....................... 30, 31, 37

*Wong v. Belmontes,* 558 U.S. 15, 22-23 (2009) ..........................................................39

## STATUTES

Tex. Penal Code §12.33 ...........................................................................................41

Tex. Penal Code §22.011(f) ......................................................................................41

## RULES

Tex. R. App. P. 21.7 .................................................................................................44

Tex. R. App. P. 21.8(c)...........................................................................................30

Tex. R. Evid. 602.............................................................................................. 38, 39

Tex. R. Evid. 801(d) ......................................................................................... 38, 39

Tex. R. Evid. 802 .............................................................................................. 38, 39

NO. 14-15-00285-CR

IN THE

COURT OF APPEALS

FOR THE

FOURTEENTH DISTRICT OF TEXAS

HOUSTON, TEXAS

DAVID RUIZ, Appellant
V.
THE STATE OF TEXAS, Appellee

Appealed from the 212th Judicial District
Court of Galveston County, Texas
Cause No. 11CR1921

BRIEF FOR THE STATE OF TEXAS

TO THE HONORABLE COURT OF APPEALS:

Now comes Jack Roady, Criminal District Attorney for Galveston County, Texas,

and files this brief for the State of Texas.

The one-volume Clerk's Record is referred to in the State's Brief as "C.R. page". The Reporter's Record is multiple volumes and is referred to as "R.R. volume number: page".

# SUMMARY OF THE ARGUMENT

David Ruiz pled guilty to sexual abuse of a child and was placed on 6 years deferred community supervision. In just over one year, the State moved to adjudicate Ruiz's guilt and revoke his community supervision. After hearing evidence that Ruiz essentially did nothing on probation, the trial court found 12 probation violations true, adjudicated Ruiz's guilt, and sentenced him in 20 years confinement. Ruiz raises 2 issues on appeal.

In his first issue, Ruiz claims his trial counsel was ineffective for failing to investigate his case and present mitigation evidence. Ruiz claims counsel should've spoken to his mother and sister. He claims the women were available to testify and would've told the court that Ruiz was sexually abused by his step-father and had a head injury. In his second issue, Ruiz claims the trial court abused its discretion by not granting a hearing on his motion for new trial.

First, trial counsel did show the court that Ruiz had a head injury and was sexually abused by his step-father. His family's information was cumulative. Applicable to both his first and second issue, the same trial judge that set Ruiz's punishment also received the motion for new trial and the accompanying affidavits. By allowing the motion to be overruled by operation of law without a hearing, the court found the affidavits would not have impacted its punishment choice. Consequently, Ruiz's first and second issues should be overruled.

## STATEMENT OF FACTS

Ruiz pled guilty and in exchange for 6 years deferred community supervision for sexually assaulting his 8 year old sister over an extended period of time.[1] Within 13 months of his plea, he began violating his probation.[2] The probation department filed a motion to adjudicate.[3] Over the next two years, they amended it four times, each time alleging more violations.[4]

At the motion to adjudicate hearing, Ruiz pled true to not participating in community service and failing to comply with the polygraph requirement.[5] He told the trial court that he understood the range of punishment, that he wasn't forced to plea true to the two allegations, that he pled true because he violated those conditions, and that he understood that the trial court would find the two allegations true based on his pleas.[6]

The probation officer testified that the probation department explained the probation terms to Ruiz.[7] She told the trial court that every time Ruiz reported to the department (which was generally twice a month) he had an opportunity to ask questions

---

[1] C.R. 8 (indictment); C.R. 20 (judgment and sentence); R.R.II: 39.
[2] C.R. 33 (motion to adjudicate guilt-revoke community supervision-sentence defendant alleging Ruiz committed failure to register in October 2012).
[3] *Id.*
[4] C.R. 87 (fourth amended motion adjudicate guilt-revoke community supervision-sentence defendant).
[5] R.R.II: 10-11.
[6] R.R.II: 12-13.
[7] R.R.II: 18.

about his probation.[8]

The probation officer also testified Ruiz violated his probation conditions in an number of additional ways. The probation officer testified:

- Ruiz wasn't supposed to commit a new crime, but he did by failing to register as a sex offender.[9]

- Ruiz was supposed to register with the Texas City Police Department as a sex offender and give notice to law enforcement and the probation department before changing his address.[10] He didn't give notice when he moved.[11]

- Ruiz was supposed to notify the probation department of any changes in address, employment, and arrests within 48 hours.[12] For more than a week, he didn't report the failure to register charge or that he was transient.[13]

- Ruiz was supposed to report to the probation officer at least once a month as directed by the officer.[14] He didn't report in December 2012, January 2013, February 2013, April 2013, November 2013, December 2013, or February 2014.[15]

- Ruiz was supposed to pay a number of different fees, but he didn't.[16] He only

---

[8] R.R.II: 18-19.
[9] R.R.II: 19.
[10] R.R.II: 29.
[11] R.R.II: 29.
[12] R.R.II: 20.
[13] R.R.II: 20-21.
[14] R.R.II: 19-20.
[15] R.R.II: 20-21.
[16] R.R.II: 22-23.

4

paid $260 of the $2,505 he owed as of the revocation hearing.[17] The probation officer talked to Ruiz several times about being behind in his fees.[18] Each time he said he had a job and would make a payment.[19] Eventually, the probation department did a financial study.[20] Ruiz had an extra $330 a month he could've paid towards his fees, but he chose not to.[21] Indeed, Ruiz received two lump payments of thousands of dollars and promised to make a payment towards his fees. But, again, he did not.[22]

- Ruiz was supposed to attend and participate in psychological counseling for sex offenders.[23] He didn't.[24] He had sporadic attendance and incurred no-show fees.[25] He stopped going completely after October 2013.[26] The counselor even offered to lower the no-show fees, but Ruiz still didn't pay.[27]

- Ruiz wasn't supposed to have unmonitored access to the internet.[28] The probation officer found a Facebook account with Ruiz's name and image with a last post from October.[29] Trial counsel objected to the admission of the

---

[17] R.R.II: 23.
[18] R.R.II: 23.
[19] R.R.II: 23.
[20] R.R.II: 25.
[21] R.R.II: 25.
[22] R.R.II: 25-26.
[23] R.R.II: 26.
[24] R.R.II: 28.
[25] R.R.II: 28.
[26] R.R.II: 28.
[27] R.R.II: 28-29.
[28] R.R.II: 30.
[29] R.R.II: 30-31.

5

Facebook post as hearsay and as improperly authenticated.[30] The trial court sustained the objections.[31]

- Ruiz wasn't supposed to engage in any kind of electronic communication with anyone under 18.[32] He violated this by having a conversation with a female whose Facebook identified her as underage.[33] Trial counsel objected again.[34] The trial court sustained the objection.[35]

- Ruiz was supposed to identify any equipment that had access to the internet.[36] He violated this term by making Facebook posts from a mobile device.[37]

The probation officer testified she was aware of the basics of Ruiz's underlying case because she has to have access to his threat level, must use the information to determine the level of supervision to provide him, and may need it to discuss facts with the polygraphers and therapist.[38] She said the offense report is also a part of the probation file.[39] The probation officer told the trial court that Ruiz was on probation for sexually assaulting his sister over an extended period of time.[40] She said they had actual

---

[30] R.R.II: 33.
[31] R.R.II: 36.
[32] R.R.II: 36.
[33] R.R.II: 37.
[34] R.R.II: 37.
[35] R.R.II: 37.
[36] R.R.II: 37.
[37] R.R.II: 37.
[38] R.R.II: 38.
[39] R.R.II: 38.
[40] R.R.II: 38.

intercourse.[41] The girl was 8 years old.[42] She testified Ruiz told her he was innocent and he didn't feel like he should be on probation for anything.[43] The probation officer told the trial court that she recommended revocation.[44]

On cross-examination, the probation officer testified that she was aware Ruiz and his sister were victims of sexual assault perpetrated by their step-father.[45] She testified she wasn't Ruiz's probation officer when he first began probation, and she had no firsthand knowledge if Ruiz was aware of the probation terms when he first began probation.[46] She testified she didn't have any knowledge of Ruiz falling from a building and cracking his skull.[47] She told the court she first learned about the injury from the defense attorney.[48] She testified Ruiz told her that he had $110 of $120 to pay the sex offender therapist and that he was going to borrow $10 from his mother so that he could begin counseling.[49] She said Ruiz told her when they first met that he suffers from anxiety, but no longer needed medication.[50] He didn't tell her about any other mental or physical conditions.[51] She said it would surprise her to learn Ruiz took 5 medications

---

[41] R.R.II: 39.
[42] R.R.II: 39.
[43] R.R.II: 47.
[44] R.R.II: 39.
[45] R.R.II: 39.
[46] R.R.II: 39-40.
[47] R.R.II: 44.
[48] R.R.II: 48-49.
[49] R.R.II: 45.
[50] R.R.II: 45.
[51] R.R.II: 45.

daily.[52] She told the court the defense attorney first informed her that Ruiz was having mental issues in the jail.[53]

The Galveston County Sheriff's sex offender registration compliance officer explained that a person has 7 days to register with her office.[54] She testified the probation department did the initial sex offender registration forms with Ruiz and she did additional forms with him, took his prints, and submitted his DNA to DPS.[55] The trial court admitted a certified copy of the sex offender registration form Ruiz did with the compliance officer.[56] The compliance officer testified the form documents her first interaction with Ruiz.[57]

The form shows Ruiz has a lifetime duty to register as a sex offender.[58] He's supposed to register annually, 30 days before or after his birthday.[59] The sex offender compliance officer testified Ruiz was assigned a medium risk level.[60] She told the court this meant there's a 50/50 chance he'd offend again.[61]

The officer testified the form gives the registration requirements Ruiz must abide by.[62] She testified she went through each requirement with Ruiz and Ruiz initialed each,

---

[52] R.R.II: 46.
[53] R.R.II: 48-49.
[54] R.R.II: 51.
[55] R.R.II: 52.
[56] R.R.II: 53-54; State's Exhibit 2.
[57] R.R.II: 53-54.
[58] R.R.II: 54; State's Exhibit 2.
[59] R.R.II: 54; State's Exhibit 2.
[60] R.R.II: 54; State's Exhibit 2.
[61] R.R.II: 55; State's Exhibit 2.
[62] R.R.II: 55; State's Exhibit 2.

saying he understood the registration requirements.[63] Ruiz initialed that he understood he was required to register with the municipality or the county where he's going to live for more than 7 days.[64] He initialed that he must verify his registration by appearing every year on his birthday.[65] He initialed that he must give 7 days' notice to the probation department and the sheriff's office before he changes his address.[66] The officer testified Ruiz initialed that he was required to notify the compliance officer if he was transient.[67] The compliance officer testified Ruiz was required to notify the sheriff's office and the probation department if he stays more than 48 hours at another address three times in a month.[68] The compliance officer testified Ruiz was notified of the criminal penalties if he didn't abide by the requirements.[69] Ruiz told the compliance officer he was living at an address in Hitchcock.[70]

The compliance officer testified she underlined key words in the form to help make sure Ruiz understood the requirements.[71] Ruiz signed the registration compliance form.[72] The officer gave Ruiz a copy of the form he initialed.[73] The officer testified she

---

[63] RR.II: 55; State's Exhibit 2.
[64] R.R.II: 55; State's Exhibit 2.
[65] R.R.II: 56; State's Exhibit 2.
[66] R.R.II: 56-57; State's Exhibit 2.
[67] R.R.II: 57; State's Exhibit 2.
[68] R.R.II: 57; State's Exhibit 2.
[69] R.R.II: 57-58; State's Exhibit 2.
[70] R.R.II: 55; State's Exhibit 2.
[71] R.R.II: 57; State's Exhibit 2 shows the underlined words.
[72] R.R.II: 58; State's Exhibit 2.
[73] R.R.II: 56.

believed Ruiz understood her instructions.[74]

The compliance officer also testified that in May, she tried to contact Ruiz at the address he provided to make sure he was living there.[75] Ruiz wasn't there, so the officer left a hanger on the gate with a message to call her within 24 hours.[76] The officer testified the people who lived at the address called her.[77] They asked why she left a hanger because there were no sex offenders living at the address.[78] The officer informed them that Ruiz is a sex offender.[79] The residents said Ruiz couldn't live with them anymore.[80] The officer called Ruiz.[81] Ruiz told her he'd work it out and that he'd be staying at the same address.[82]

In August, the officer went to the address again.[83] Nobody was home.[84] She left another notice.[85]

In October, the compliance officer received an email from the probation officer to update Ruiz's registration because he got a new job.[86] The compliance officer called the probation officer and told her that Ruiz's sex offender requirements require Ruiz to

---

[74] R.R.II: 58.
[75] R.R.II: 58-59.
[76] R.R.II: 59.
[77] R.R.II: 59.
[78] R.R.II: 59.
[79] R.R.II: 59.
[80] R.R.II: 59-60.
[81] R.R.II: 60.
[82] R.R.II: 60.
[83] R.R.II: 60.
[84] R.R.II: 60.
[85] R.R.II: 60.
[86] R.R.II: 61.

make the notification.[87]

The sex offender registration compliance officer testified she planned to go out on Halloween for compliance checks.[88] She went to Ruiz's registered address.[89] A person living at the house said Ruiz had not been living there.[90] The officer called Ruiz on speaker phone.[91] Ruiz admitted to the officer that he was not living there.[92] The compliance officer took a written statement from the resident.[93] Over trial counsel's objection, the court admitted the statement.[94] The resident stated Ruiz hadn't lived at the address since May.[95]

The compliance officer told the court that Ruiz did not contact the sheriff's office in June, July, August, September, or October to register.[96] The officer testified that when she talked to Ruiz on Halloween, he asked her for another chance to register.[97] She told him no.[98] The officer testified Ruiz was supposed to give her notice 7 days before moving and he didn't.[99] The officer testified Ruiz failed to give notice of his change in

---

[87] R.R.II: 61.
[88] R.R.II: 61.
[89] R.R.II: 61.
[90] R.R.II: 61-62.
[91] R.R.II: 62.
[92] R.R.II: 62.
[93] R.R.II: 62-63; State's Exhibit 3.
[94] R.R.II: 64.
[95] R.R.II: 64; State's Exhibit 3.
[96] R.R.II: 65.
[97] R.R.II: 66.
[98] R.R.II: 66.
[99] R.R.II: 66.

employment.[100]

On cross-examination, the compliance officer testified she didn't know if Ruiz saw her message hangers in May or in August.[101] The officer testified she didn't know if the probation department told Ruiz he had to notify the sheriff's office of a change in employment (although that's a requirement in the sex offender form that Ruiz initialed, signed, and had a copy of).[102] The officer testified she did have paperwork that Ruiz reported to a Texas City Police sex offender compliance officer.[103] She agreed that it was possible that in October, Ruiz was living in Texas City.[104] The officer testified that Ruiz was required to give the sheriff's office 7 days' notice if he moved to Texas City.[105]

On re-direct, the compliance officer testified she filed against Ruiz for his failure to give 7 days' notice before moving.[106] She told the court that she was confident Ruiz understood the 7 day requirement.[107]

On re-cross, the officer testified that she had no firsthand knowledge of Ruiz's mental or physical incapacities.[108] The officer repeated that she underlined the requirements that are usually violated to make sure Ruiz understood.[109] She repeated that

---

[100] R.R.II: 67.
[101] R.R.II: 67-68.
[102] R.R.II: 69; State's Exhibit 2.
[103] R.R.II: 69-70.
[104] R.R.II: 70.
[105] R.R.II: 71.
[106] R.R.II: 71.
[107] R.R.II: 72
[108] R.R.II: 72.
[109] R.R.II: 73.

Ruiz understood.[110]

Ruiz also testified.[111] He said he understood why they were in court.[112] He said he believed he was living with his grandmother in Texas City on Halloween.[113] He claimed he told his probation officer and the Texas City police compliance officer where he was living.[114] He claimed he contacted the Texas City officer within 7 days of moving there.[115] He said the probation officer and the Texas City compliance officer went to his grandmother's house.[116] He told the court that he believed the probation officer and the Texas City officer would contact the sheriff's office.[117] He said his grandmother let him live there.[118] She was having a hard time because his grandfather died.[119] He said she had no other family around her, but him.[120] He told the court that he believed he was in compliance with his registration requirements.[121]

Despite the probation officer's testimony, Ruiz told the court that he did report to the probation officer in December 2012, January 2013, February 2013, March 2013, April 2013, November 2013, December 2013, and February 2014.[122]

---

[110] R.R.II: 73.
[111] R.R.II: 74.
[112] R.R.II: 74.
[113] R.R.II: 75.
[114] R.R.II: 75.
[115] R.R.II: 78.
[116] R.R.II: 75.
[117] R.R.II: 78.
[118] R.R.II: 75.
[119] R.R.II: 76.
[120] R.R.II: 76.
[121] R.R.II: 76.
[122] R.R.II: 77.

Ruiz claimed he was never told a specific amount of money he was supposed to pay the probation department each month.[123] He said he paid something, but getting a job was hard.[124] He said he had several jobs, but when they ran his background, they'd let him go.[125] He said he had to pay for the house, food, and clothes.[126] He claimed he always kept some money aside to pay probation.[127] He said it was a big issue not to be able to keep a job.[128]

Ruiz testified that he did see his sex offender therapist.[129] He admitted he couldn't say when he stopped seeing the therapist.[130] But said he stopped seeing him because he was going to have to start paying fees.[131] Ruiz, despite the probation officer's testimony to the contrary, said that the therapist wasn't going to allow him to make payments.[132] He said he didn't have $120 upfront.[133]

Ruiz told the court that he was available to the prosecution.[134] He said the prosecution called him to testify against his step-father.[135] The State objected to

---

[123] R.R.II: 77.
[124] R.R.II: 77.
[125] R.R.II: 77.
[126] R.R.II: 78.
[127] R.R.II: 78.
[128] R.R.II: 83-84.
[129] R.R.II: 82-83.
[130] R.R.II: 83.
[131] R.R.II: 83.
[132] R.R.II: 83.
[133] R.R.II: 83.
[134] R.R.II: 78.
[135] R.R.II: 79.

14

relevance.[136] The trial court sustained the objection.[137]

Ruiz explained that before this, he was living with his mother.[138] He told the court he wasn't allowed to live there anymore because of the probation conditions.[139] He said his mother was supportive and active in his life.[140] He said his mother was outside the courtroom.[141] He also said he believed he had family support.[142]

Ruiz told the court that he's gone over the probation conditions ten times with trial counsel and now he better understands them.[143] He explained he may understand the terms better now that he's on medication.[144] He said he takes Risperdal for depression, Paxil for anxiety, Hydrozyine for blood, Dillantin for seizures, and Effexor.[145]

Ruiz said he wasn't in a car accident.[146] He told the court, "I fell off . . . 16 foot balcony and cracked my skull."[147] He said it was "kind of traumatic" for him.[148] He told the court, "after that, I just – that's when, I guess, it kind of went downhill for me after

---

[136] R.R.II: 79.
[137] R.R.II: 79.
[138] R.R.II: 80.
[139] R.R.II: 80.
[140] R.R.II: 80.
[141] R.R.II: 80-81.
[142] R.R.II: 81.
[143] R.R.II: 81.
[144] R.R.II: 81.
[145] R.R.II: 81-82.
[146] R.R.II: 82.
[147] R.R.II: 82.
[148] R.R.II: 82.

that."[149] He told the court the in injury caused seizures.[150]

Ruiz asked the court for another chance.[151] He said he can do it and that he's not giving up.[152] He told the court he's not a bad person.[153] He asked the court to let him stay on probation.[154] He told the court that his cousin had a job lined up for him when he got out.[155] He said he had a house to go to as well.[156]

On cross-examination, Ruiz said his accident happened a few years back.[157] He said he couldn't remember how it happened, though he remembered falling and being in the hospital for a while.[158] He repeated that the injury affected his ability to do probation.[159] He claimed he understood his probation since being incarcerated because he went to the law library and asked different officers to explain it to him.[160]

Ruiz claimed he didn't understand that he committed another offense until he went to the law library.[161]

Ruiz said he thought he'd be alright if he paid off all his fees before the end of his

---

[149] R.R.II: 82.
[150] R.R.II: 82.
[151] R.R.II: 78.
[152] R.R.II: 78.
[153] R.R.II: 78.
[154] R.R.II: 78-79.
[155] R.R.II: 80.
[156] R.R.II: 80.
[157] R.R.II: 85.
[158] R.R.II: 85.
[159] R.R.II: 86.
[160] R.R.II: 86, 89.
[161] R.R.II: 88.

probation.[162] He told the court he didn't know not paying would be a violation or that paying a little amount would be a violation.[163] He said he didn't know paying $260 out of $4,800 over 4 years was a violation.[164] When asked where the $360 extra a month the probation department's financial study found, Ruiz said "to a little bit of everything."[165] When asked where the $4,000 he received on his 21st birthday went, Ruiz said he had to pay the person he was living with.[166] He admitted he paid nothing towards his probation fees.[167] He claimed when he got the money, he was still going to the sex offender therapist and he spent it all before quitting therapy.[168]

Ruiz admitted he wasn't discharged from the sex offender course.[169] He repeated he stopped going because he was supposed to start paying.[170] Then he agreed that the payments were no-show fees.[171] Ruiz, contrary to the probation officer's testimony, said he didn't tell the officer he had $110 of the $120 for the therapy no-show fees.[172]

Ruiz repeated he had family support.[173] He said that he didn't always have their support, but they're standing by him now.[174]

---

[162] R.R.II: 87.
[163] R.R.II: 90.
[164] R.R.II: 90.
[165] R.R.II: 92.
[166] R.R.II: 92.
[167] R.R.II: 92.
[168] R.R.II: 93.
[169] R.R.II: 84.
[170] R.R.II: 94-95.
[171] R.R.II: 95.
[172] R.R.II: 95.
[173] R.R.II: 93-94.
[174] R.R.II: 93-94.

Ruiz told the court he wouldn't say he did nothing for 4 years of probation.[175]

Ruiz admitted that he's "been together" with his girlfriend since "I was 18, 18 ½."[176] He said they've been together "almost" 5 years.[177] He told the court he was positive they're the same age and that she's not 19.[178] He said it would be inaccurate if his girlfriend's Facebook said that she just turned 19.[179] The State pointed out that if his girlfriend was 19 now and they'd been together 5 years, the girl would've been 14 when they got together.[180] Ruiz said that's not his testimony.[181]

After showing Ruiz something not in evidence, the State asked Ruiz his girlfriend's age.[182] Ruiz admitted she's 19.[183] The State asked, "You testified earlier, a minute ago you had been together 5 years, correct?"[184] Ruiz replied, "No, I didn't say 5 years."[185] The State asked if he said he was 18.[186] Ruiz repeated he didn't say 5 years.[187] He claimed, "I said we knew each other since we were 18."[188] The State asked:

> I believe you did tell me just a few minutes ago that you were with your girlfriend since you were 18 and now you're 23. And you just told me your girlfriend's 19. So that means

[175] R.R.II: 94.
[176] R.R.II: 95.
[177] R.R.II: 96.
[178] R.R.II: 96.
[179] R.R.II: 96.
[180] R.R.II: 96-97.
[181] R.R.II: 97.
[182] R.R.II: 99.
[183] R.R.II: 99.
[184] R.R.II: 99.
[185] R.R.II: 99.
[186] R.R.II: 99.
[187] R.R.II: 99.
[188] R.R.II: 99.

you have been with your girlfriend since she was 14. And that also means that you've been hanging out with someone during your probation period who is younger than 18, isn't that a fact?[189]

Ruiz replied by saying "No, that's not a fact."[190]

Ruiz said it would be "astonishing" if there's a picture of him bowling with children.[191] When asked what his explanation would be for him holding a beer at a bbq, he said he'd ask if he was on probation when the photo was taken.[192]

The State showed Ruiz the sex offender registration requirements he signed, initialed, and put his fingerprint on.[193] Ruiz admitted the initials, fingerprint, and signature were his.[194] Ruiz said that despite his print, initials, and signature, he didn't know he was supposed to tell the sheriff's office he was moving.[195]

On re-direct, Ruiz said that he's got one payment from his settlement left.[196] He claimed it's enough to cover all the fees left on his probation.[197]

After Ruiz testified, the trial court asked if he had any other witnesses.[198] Trial counsel said, "Yes, Your Honor, his mother – if I could step out."[199] The court granted

---

[189] R.R.II: 99.
[190] R.R.II: 99.
[191] R.R.II: 98.
[192] R.R.II: 98.
[193] R.R.II: 100-01.
[194] R.R.II: 100-01.
[195] R.R.II: 101.
[196] R.R.II: 105.
[197] R.R.II: 105.
[198] R.R.II: 106.
[199] R.R.II: 106.

counsel permission.[200] Then there was a discussion off the record.[201] Counsel said Ruiz's mother had to go to work.[202]

Trial counsel called Ruiz's cousin as a character witness.[203] The State objected if he was strictly a character witness.[204] The State said if they're going to have a punishment phase of the hearing, that the witness might be better suited for that.[205] If not, the State said it would change its objection.[206] The court asked the State if it was going to present a victim impact statement or any evidence during punishment.[207] The State said no.[208] The court said, "Why don't we allow him to begin to testify. When you hear a question that you object to, we'll take it from there."[209] The State agreed.[210]

Ruiz's trial counsel began questioning Ruiz's cousin.[211] The cousin told the court he's assisting Ruiz in finding steady employment.[212] He said he's always known Ruiz to be a hard worker.[213] He told the court that Ruiz always attempted to get employment, even if it was only temporary.[214] He said he's spoken to his supervisor and was told Ruiz

---

[200] R.R.II: 106.
[201] R.R.II: 106.
[202] R.R.II: 106.
[203] R.R.II: 106.
[204] R.R.II: 106.
[205] R.R.II: 106.
[206] R.R.II: 106.
[207] R.R.II: 106-07.
[208] R.R.II: 107.
[209] R.R.II: 107.
[210] R.R.II: 107.
[211] R.R.II: 107.
[212] R.R.II: 107.
[213] R.R.II: 109.
[214] R.R.II: 109.

had a job as soon as he got out.[215] The supervisor knows about Ruiz's criminal history.[216]

Ruiz's cousin said he's been close to Ruiz all of his life.[217] He said Ruiz has been trying to get stable housing.[218] He said all of their family is behind Ruiz and are trying to get him on his feet.[219] He said they'd follow whatever the trial court puts in place if Ruiz is allowed to remain on probation.[220] He told the court that, in his opinion, Ruiz would do well if he was allowed back on probation.[221]

On cross-examination, Ruiz's cousin admitted he's never overseen Ruiz's probation.[222] He agreed he knew nothing about Ruiz's probation fees.[223] He said he knew about some of the stipulations---like not being around children, not drinking, and not having Facebook.[224] He agreed it wasn't his job to follow Ruiz around to make sure he kept up with his probation.[225]

After asking if there was any more witnesses, the trial court asked counsel for closing arguments.[226] The State argued Ruiz has done nothing during 4 years of probation.[227] The State noted the court heard excuses and "vague allusions to some kind

---

[215] R.R.II: 107-08.
[216] R.R.II: 107-08.
[217] R.R.II: 108.
[218] R.R.II: 108.
[219] R.R.II: 108.
[220] R.R.II: 108.
[221] R.R.II: 110.
[222] R.R.II: 110.
[223] R.R.II: 110-11.
[224] R.R.II: 110-11.
[225] R.R.II: 111.
[226] R.R.II: 111.
[227] R.R.II: 112.

of head injury," but heard nothing to justify a complete lack of effort on probation.[228] The State pointed out that Ruiz changed his story about his girlfriend, her age, and when they got together.[229] The State argued that Ruiz was given a gift of 6 years deferred for sexual assault of a child, despite pleading guilty to forcefully having sex with his 8 year old sister.[230] The State's attorney told the court he wasn't the prosecutor at the time of the plea, but there was a reason Ruiz was given a chance.[231] The State argued since Ruiz received his chance, he had a $6,500 windfall, but paid $260 out of $5,000 to probation.[232] He stopped therapy.[233] He didn't do any community service.[234] And he didn't take his polygraph.[235] The State argued this is not a typical second degree felony.[236] The State argued Ruiz was given a gift that he threw in the trash by making no effort.[237] The State concluded by arguing this is a max type offense.[238] The State told the court it was asking for the max.[239]

Ruiz's trial counsel began by telling the trial court, "I beg to differ that being forced by your step-father to have sex with your younger sister, I beg to differ that that's

---

[228] R.R.II: 112.
[229] R.R.II: 113.
[230] R.R.II: 113.
[231] R.R.II: 113.
[232] R.R.II: 113-14.
[233] R.R.II: 114.
[234] R.R.II: 114.
[235] R.R.II: 114.
[236] R.R.II: 114.
[237] R.R.II: 114.
[238] R.R.II: 114-15.
[239] R.R.II: 115.

a gift for anybody."[240] Counsel reminded the court that Ruiz was also sexually abused

and was a child when these heinous acts first started.[241] Counsel agreed that she, like the

current prosecutor, was not the lawyer that put Ruiz on probation.[242] She argued:

> I do not have the underlying facts of this probation, besides
> what was given to me in the motion to revoke and in the
> underlying file. I don't know why he pled to what he pled,
> but the reality is that he did. But he is not -- he is not the
> heinous person that the prosecution is attempting to make
> him out to be. He is a victim, in fact, too. In fact, he
> testified in this very court on -- against his step-father, who
> still charged at him while he was on the stand. He is not a
> heinous criminal.[243]

She noted Ruiz suffers from some physical and mental incapacities and is on 5

medications.[244] She argued Ruiz did his best, even though he couldn't live with his

mother and didn't have a college degree.[245] She argued it was hard for Ruiz to get a job,

but he did his best to find work.[246] Trial counsel asked the court to give Ruiz an

opportunity to redeem himself.[247] She claimed Ruiz understood the terms now and was

willing to stay on probation.[248]

After a discussion off the record, the trial court found there was sufficient

---

[240] R.R.II: 115.
[241] R.R.II: 115.
[242] R.R.II: 115.
[243] R.R.II: 115-16.
[244] R.R.II: 116.
[245] R.R.II: 116.
[246] R.R.II: 116-17.
[247] R.R.II: 118.
[248] R.R.II: 118.

evidence to support the allegations in the State's motion to adjudicate guilt.[249] The court

found Ruiz violated his probation in 12 ways.[250] Specifically, the trial court found:

1. On or about the 31st day of October, 2012, in Galveston County, Texas, said Defendant, David Ruiz, did then and there, while being a person required to register with the local law enforcement authority in the municipality and/ or county where the defendant resided or intended to reside for more than seven days, to-wit: Galveston County, because of a reportable conviction for sexual assault of a child on the 8th day of September, 2011 in cause number 11CR1921, in the 212th District Court of Galveston County, Texas intentionally and knowingly, fail to report the anticipated move date and new address to the Galveston County Sheriff's Office, the local law enforcement authority designated as the said defendant s primary registration authority, not later than the 7th day before the intended change; and

2. Said Defendant did fail to report to his adult Community Supervision Officer as ordered for the month(s) of December, 2012 and January, February, March, April, November, and December 2013, and February 6, 2014; and

3. Said Defendant did fail to report within forty-eight hours to his Community Supervision Officer of any change of address; and

4. Said Defendant did fail to pay Supervision fees as ordered, and is currently $1,275.00 in arrears;

5. Said Defendant did fail to pay Cost of Court to the G.C.C.S.C.D as ordered, and is currently $350.00 in arrears;

---

[249] R.R.II: 119.
[250] R.R.II: 119.

6. Said Defendant did fail to reimburse Galveston County for compensation of appointed counsel as ordered, and is currently $350.00 in arrears;

7. Said Defendant did fail to pay Crime Stoppers Program payment as ordered, and is currently $25.00 in arrears;

8. Said Defendant did fail to pay the Sexual Assault Program Fund fee as ordered and is currently$ 175.00 in arrears; and

9. Said Defendant failed to participate in Community Service work as approved by the Court at a rate of no less than sixteen (16) hours per month until completed; and

10. Said Defendant has failed to attend counseling sessions for sex offenders; and

11. Said defendant failed to report to Texas City Police Department within (7) days for sex offender registration as ordered; and

On February 27, 2014, said defendant, David Ruiz, was arrested for Sex Offenders Failure to Comply by Galveston Police Department; and

12. Said Defendant has failed to comply with polygraph requirements.[251]

After adjudicating Ruiz's guilt, the trial court asked if either side had any motions, requests, or anything additional to present for punishment.[252] The State replied that if this is the punishment phase, it would move to interject all the evidence presented during the hearing to be considered and then asked the court to sentence Ruiz to 20

---

[251] R.R.II: 119; C.R. 91-92 (fourth amended motion to adjudicate, alleging Ruiz's probation violations).
[252] R.R.II: 119.

years.[253] Ruiz asked to remain on probation and if not deferred, receive straight probation.[254] The trial court found Ruiz guilty of sexual assault of a child and sentenced him to 20 years confinement.[255]

Ruiz filed a motion for new trial, arguing that his trial counsel was ineffective for not investigating and presenting mitigating evidence.[256] He argued (as he does on appeal) that his mother and his sister (a sister he wasn't convicted of sexually assaulting) were available to testify.[257] He attached affidavits from both.[258] Ruiz's mother and sister claimed they would've testified and were available if counsel had contacted them and informed them they could testify.[259] Ruiz's mother said she was at the adjudication hearing and would've asked to testify if she knew she could.[260] She did not explain where she was when trial counsel tried to call her to testify and looked for her in the courthouse. Both women said his step-father sexually assaulted Ruiz.[261] Both women claimed Ruiz was forced by his step-father to have sex with his sister.[262] Ruiz's mother said his innocence was stolen.[263] Both said Ruiz fell, fractured skull, and had seizures.[264] Ruiz's sister said he has trouble understanding instructions and has to hear them

---

[253] R.R.II: 119-20.
[254] R.R.II: 120.
[255] R.R.II: 120.
[256] C.R. 154-60.
[257] C.R. 155-58.
[258] C.R. 162-66.
[259] C.R. 162, 165.
[260] C.R. 162.
[261] C.R. 162-63, 165.
[262] C.R. 163, 165.
[263] C.R. 163.
[264] C.R. 162, 165.

multiple times.[265] Ruiz's mother claimed he was depressed, told her he had nothing left, and that he mentioned suicide.[266]

Ruiz presented the motion with the affidavits to the trial court.[267] The trial judge signed Ruiz's certification of presentment.[268] The court scheduled hearing on the motion,[269] but then denied the hearing.[270] The trial court allowed the motion to be overruled by operation of law.[271] This appeal followed.

---

[265] C.R. 165.
[266] C.R. 163.
[267] C.R. 175.
[268] C.R. 175.
[269] C.R. 182-84.
[270] C.R. 196.
[271] TEX. R. APP. P. 21.8(c) (providing motion for new trial is deemed denied absent timely ruling by written order).

**FIRST ISSUE**

**Counsel showed the State's witnesses knew Ruiz was an abuse victim. She also showed they were unaware of Ruiz's head injury. Counsel presented evidence, through Ruiz, that he was sexually abused and suffered a head injury that may've impacted his ability to do probation.**

**How was counsel deficient when she presented mitigating evidence?**

**How was Ruiz prejudiced when the same judge set his punishment and would've known if cumulative mitigating evidence would've changed its sentence?**

## ARGUMENT AND AUTHORITIES

In his first issue, Ruiz argues the trial court abused its discretion by denying his motion for new trial because he claims he established his trial counsel was ineffective for not investigating and presenting mitigating evidence during the revocation hearing. He contends his mother and his sister (one of the sisters he wasn't convicted of sexually assaulting) were available and willing to testify. According to their affidavits, they would've testified Ruiz fell from a balcony and was a sexual abuse victim. He argues that their live testimony would've led the trial court to give him a lesser punishment.

Even if this Court and the trial court were to assume Ruiz's sister's and mother's affidavits were credible, Ruiz hasn't shown counsel was deficient or that he was prejudiced. He also hasn't shown he would've received a lesser sentence. The trial court

28

set his punishment. The trial court heard the testimony of Ruiz's probation officer and the sex offender registration compliance officer. The trial court heard that Ruiz did very little to comply with his probation. The trial court found he violated 12 conditions of his probation---including failing to complete his sex offender therapy and failing to register as a sex offender.[272] Only the trial court, as Ruiz's punisher, would know if the affidavits would impact its sentence. The affidavits were before the trial court when it allowed Ruiz's motion for new trial to be overruled by operation of law. Clearly the court did not find the affidavits compelling.

The trial court didn't abuse its discretion by denying Ruiz's motion. Ruiz is not entitled to new punishment hearing.

## I. *Motion For New Trial Standard Of Review*

The appellate court reviews a trial court's denial of a motion for new trial for an abuse of discretion, reversing only if the trial court's opinion was clearly erroneous and arbitrary.[273] "A trial court abuses its discretion if no reasonable view of the record could support the trial court's ruling."[274] This deferential review requires the appellate court to view the evidence in the light most favorable to the trial court's ruling.[275] The reviewing court may not substitute its own judgment for that of the trial court and must uphold

---

[272] R.R.II: 119; C.R. 123 (judgment adjudicating guilt).
[273] *Riley v. State,* 378 S.W.3d 453, 457 (Tex. Crim. App. 2012).
[274] *Id.*
[275] *Id.*

the trial court's ruling if it's within the zone of reasonable disagreement.[276] "This same deferential review must be given to a trial court's determination of historical facts when it is based solely on affidavits, regardless of whether the affidavits are controverted."[277] "Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous."[278] The same standard of review applies regardless of whether the motion for new trial is denied by an express ruling or overruled by operation of law.[279]

## II.    *Ineffective Assistance Of Counsel Relevant Law*

To establish ineffective assistance of counsel, the appellant must demonstrate, by a preponderance of the evidence, that (1) his counsel's performance was deficient, and (2) there is a reasonable probability that the result of the proceeding would have been different but for his counsel's deficient performance.[280] An appellant's failure to make either of the required showings defeats the claim of ineffective assistance.[281]

*Strickland's* first prong requires the appellant to show that his counsel's

---

[276] *Id.*

[277] *Id.*

[278] *Id.*

[279] *See* TEX. R. APP. P. 21.8(c); *Mallet v. State,* 9 S.W.3d 856, 868 (Tex. App.---Fort Worth 2000, no pet.) ("A trial court's decision to deny a motion for new trial or allow it to be overruled by operation of law is also reviewed on an abuse of discretion standard.").

[280] *Strickland v. Washington,* 466 U.S. 668, 687 (1984); *Perez v. State,* 310 S.W.3d 890, 892-93 (Tex. Crim. App. 2010); *Cannon v. State,* 252 S.W.3d 342, 348-49 (Tex. Crim. App. 2008).

[281] *Rylander v. State,* 101 S.W.3d 107, 110 (Tex. Crim. App. 2003); *see also Williams v. State,* 301 S.W.3d 675, 687 (Tex. Crim. App. 2009) ("An appellant's failure to satisfy one prong of the *Strickland* test negates a court's need to consider the other prong.").

performance fell below an objective standard of reasonableness.[282] *Strickland's* second prong requires the appellant to demonstrate prejudice—"a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."[283]

The appellate court looks to the totality of the representation and the particular circumstances of each case, not to isolated errors.[284] The reviewing court considers the adequacy of assistance as viewed at the time of trial, not through hindsight.[285] The fact that Ruiz's appellate attorney might have pursued a different course does not support a finding of ineffectiveness.[286] The issue is whether counsel's assistance was reasonable under all the circumstances and prevailing professional norms at the time of the alleged error.[287]

The reviewing court indulges a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance, and, therefore, the appellant must overcome the presumption that the challenged action constituted "sound trial strategy."[288] The appellate review is highly deferential to counsel, and the appellate court

---

[282] *Robertson v. State,* 187 S.W.3d 475, 483 (Tex. Crim. App. 2006); *Thompson v. State,* 9 S.W.3d 808, 812 (Tex. Crim. App. 1999).

[283] *Strickland,* 466 U.S. at 694; *Thompson,* 9 S.W.3d at 812.

[284] *Robertson*, 187 S.W.3d at 483-84 *Thompson*, 9 S.W.3d at 813.

[285] *Robertson*, 187 S.W.3d at 482.

[286] *Miniel v. State*, 831 S.W.2d 310, 323 (Tex. Crim. App. 1992); *Gholson v. State*, 5 S.W.3d 266, 273 (Tex. App.---Houston [14th Dist.] 1999, pet. ref'd).

[287] *See Strickland*, 466 U.S. at 688-89.

[288] *Strickland,* 466 U.S. at 689; *Williams,* 301 S.W.3d at 687.

does not speculate regarding counsel's trial strategy.[289] To prevail on an ineffective assistance claim, the appellant must provide an appellate record that affirmatively demonstrates that counsel's performance was not based on sound strategy.[290]

Trial counsel is required to seek out and interview potential witnesses as a part of his investigation of the facts of the case.[291] However, the failure to call witnesses is irrelevant absent a showing that the witnesses were available and their testimony would have changed the result of the proceeding.[292] In evaluating the effect of potential punishment-phase witnesses, the reviewing court compares the evidence presented by the State with the evidence that the factfinder did not hear due to counsel's failure to investigate.[293]

When the ineffective assistance of counsel claim is focused on the appellant's punishment, the appellate court's prejudice inquiry is whether there's a reasonable probability that the assessment of punishment would've been less severe in the absence of defense counsel's deficient performance.[294] A reasonable probability is a probability sufficient to undermine confidence in the outcome.[295] It's not enough for the appellant to show "that the errors had some conceivable effect on the outcome of

---

[289] *See Bone v. State,* 77 S.W.3d 828, 833, 835 (Tex. Crim. App. 2002).

[290] *Mallett v. State,* 65 S.W.3d 59, 62-63 (Tex. Crim. App. 2001); *see Thompson,* 9 S.W.3d at 813 (holding that record must affirmatively demonstrate alleged ineffectiveness).

[291] *Ex parte Welborn,* 785 S.W.2d 391, 393 (Tex. Crim. App. 1990).

[292] *See Perez,* 310 S.W.3d at 894.

[293] *See id.* at 896.

[294] *See Wiggins v. Smith,* 539 U.S. 510, 534, 536 (2003); *Lair v. State,* 265 S.W.3d 580, 595 (Tex. App.--- Houston [1st Dist.] 2008, pet. ref'd).

[295] *Strickland,* 466 U.S. at 694.

the proceeding."[296] "The likelihood of a different result must be substantial, not just conceivable."[297] When defense counsel presents "no evidence of mitigating factors . . . to balance against the aggravating factors presented by the State" and fails to do so because he did not investigate mitigating factors or contact potential mitigation witnesses, there's prejudice.[298] There's prejudice because there's no possibility that the factfinder considering mitigating evidence.[299]

Notably, when the trial judge presiding over a motion for new trial also presided over the trial itself, the reviewing court presumes that the judge knew how the evidence included with the motion for new trial would have affected his ruling on punishment.[300]

## III. *Trial Counsel Was Not Deficient*

This is not a case where trial counsel conceded she did nothing to investigate or present mitigating evidence. Instead, this is a case where there's conflicting evidence

---

[296] *Id.* at 693.

[297] *Harrington v. Richter,* 562 U.S. 86, 112 (2011).

[298] *Lopez v. State*, 462 S.W.3d 180, 188 (Tex. App.---Houston [1st Dist. 2015, no pet.) (quoting *Shanklin v. State*, 190 S.W.3d 154, 165 (Tex. App.---Houston [1st Dist.] 2005, pet. dism'd)).

[299] *See id.* at 188-89 (quoting *Shanklin*, 190 S.W.3d at 165-66 ("We conclude that appellant has demonstrated prejudice in this case. . . . [D]efense counsel's failure to interview or call a single witness, other than appellant, deprived him of the possibility of bringing out even a single mitigating factor.")).

[300] *See Smith v. State,* 286 S.W.3d 333, 344-45 (Tex. Crim. App. 2009); *Castaneda v. State*, 01-14-00389-CR, 01-14-00390-CR, 2015 WL 6930466 *9 (Tex. App.---Houston [1st Dist.] Nov. 10, 2015, no pet. h.) (finding that when a judge sentences a defendant also denies a hearing on a motion for new trial, reviewing court presumes that the trial judge knew whether additional testimony produced in affidavits would've influenced his normative sentencing judgment).

regarding the extent of trial counsel's investigation.[301] Ruiz's mother's and sister's affidavits claim trial counsel didn't contact them and, consequently, didn't uncover the mitigating evidence regarding Ruiz's head injury and sexual abuse history. However, the evidence during the revocation hearing shows counsel was aware of Ruiz's history and presented evidence of both during the hearing.

The record shows counsel cross-examined the probation officer and the sex offender compliance officer about their ignorance of Ruiz's head injury. Counsel showed the probation officer wasn't aware that Ruiz was on medication. Counsel also asked whether the probation officer knew Ruiz was a sexual abuse victim. Counsel questioned the probation officer and the sex offender registration compliance officer regarding Ruiz's understanding of the terms of his probation. Moreover, counsel presented the head trauma and sexual abuse mitigation evidence through Ruiz. Ruiz testified he was taking seizure and depression medicine. He told the court his step-father sexually abused him. He said he had a traumatic fall that left him in the hospital for a long time and caused seizures. Counsel used the mitigating evidence in closing argument. She argued Ruiz was a victim, had head trauma, and should receive another

---

[301] Notably, Ruiz pled true to 2 of the revocation allegations. There's no allegation the pleas were unknowing or involuntary. A sister appellate court held that "Where a defendant pleads true to allegations in a revocation proceeding, 'failure to conduct a full-fledged independent investigation of the facts does not necessarily result in counsel rendering constitutionally ineffective assistance.'" *Ansari v. State*, 06-14-00220-CR, 2015 WL 7300073, at *2 (Tex. App.---Texarkana Nov. 13, 2015, no. pet. h. (quoting *Eddie v. State*, 100 S.W.3d 437, 442 (Tex. App.---Texarkana 2003, pet. ref'd) and citing *Toupal v. State*, 926 S.W.2d 606, 608 (Tex. App.---Texarkana 1996, no pet.) ("We do not agree that the magnitude of independent factual investigation for a contested proceeding is necessary to protect a defendant's rights when the defendant knowingly and voluntarily pleads guilty to the alleged offense.")).

chance to redeem himself. If counsel had not investigated Ruiz's case, she wouldn't have been able to effectively cross-examine the State's witnesses and wouldn't have been able to elicit mitigating evidence from Ruiz.

Unlike counsel in *Lopez* who admitted he was unaware of the defendant's mental health history and didn't participate in collecting mitigating evidence[302] or counsel in *Shanklin* who admitted he didn't conduct any punishment investigation,[303] here the evidence shows trial counsel was aware of Ruiz's head injury and that he was a sexual abuse victim and presented evidence of both.

Relying on *Frangias v. State*,[304] Ruiz claims counsel was also deficient for not requesting a continuance because his mother left the revocation hearing without testifying.[305] According to Ruiz's mother's affidavit, had she known she could've testified, she would've stayed for the hearing. *Frangias* is distinguishable. In *Frangias*, trial counsel intentionally chose not to seek a continuance when the only witness who could corroborate the defendant's version of events and provide him a defense to the crime was unable to come to court due to medical treatment in a distant city.[306] Here, as discussed more thoroughly below, Ruiz's mother's testimony would've been, at most,

---

[302] *Lopez*, 462 S.W.3d at 186 (trial counsel admitted in affidavit that he was unaware of defendant's mental health issues or history).

[303] *Shanklin*, 190 S.W.3d at 164 (trial counsel admitted in affidavit that he "did not conduct any meaningful investigation as regards [to] the punishment stage of [appellant's] case" and that his failure to interview or call witnesses wasn't the result of reasoned trial strategy).

[304] *See Frangias v. State*, 450 S.W.3d 125 (Tex. Crim. App. 2013).

[305] Ruiz's brief 29.

[306] *See Frangias*, 450 S.W.3d at 137, 143.

additional mitigation evidence. She would've testified about Ruiz's head injury and his sexual abuse history. Ruiz already testified that he fractured his skull after a fall, had seizures, and had a hard time on probation because of the injury. Ruiz also testified he was sexually abused by his step-father. Unlike *Frangias*, where the defendant was deprived of evidence that could've proven his innocence,[307] here there already was mitigation evidence in front of the court and (as discussed below) the additional evidence wouldn't have impacted the trial court's punishment choice.

Importantly, there is some evidence in the record that contradicts Ruiz's mother's and sister's claim that they would've been available and would've testified on his behalf. Appellate counsel attempted to have both served for the later canceled motion for new trial hearing. Neither woman accepted the subpoenas, despite multiple attempts to serve them and notes left at their homes.[308] In fact, the serving officer received a voicemail from Ruiz's sister.[309] After returning her call and leaving her a voicemail, she texted the officer and said she was busy.[310] The officer went to her home.[311] A vehicle was in the driveway, but nobody answered the door.[312]

Ruiz hasn't established that his trial counsel was deficient. Unlike defense counsel in *Lopez, Shanklin,* and *Frangias*, the record shows Ruiz's trial counsel was familiar with

---

[307] *See id.* at 137.
[308] C.R. 189-91 (return of summons for Ruiz's mother after 3 attempts to locate); C.R. 193-95 (return of summons for Ruiz's sister after 3 attempts to locate).
[309] C.R. 195.
[310] *Id.*
[311] *Id.*
[312] *Id.*

the mitigating evidence and presented it to the trial court. Ruiz failed to prove *Strickland's* first prong. Ruiz also failed to prove *Strickland's* second prong.

## IV.    *Ruiz Was Not Prejudiced*

Even if counsel was deficient, Ruiz cannot show he suffered any prejudice. There's no evidence the trial court would've changed its punishment had it heard Ruiz's mother or sister testify to the content in their affidavits. An ineffective assistance of counsel claim fails if prejudice isn't proven.[313]

Unlike the defendants in *Lopez*[314] and *Shanklin*[315] who were denied the effective assistance of counsel because their lawyers utterly failed to present *any* mitigating evidence, Ruiz's trial counsel did offer mitigating evidence. While Ruiz attempts to downplay his testimony, he did testify at the revocation hearing about his fractured skull, that it affected his ability to do probation, and that he only recently understood the terms of his probation after discussing the terms repeatedly. He testified he's on medication for depression, anxiety, and seizures. He also testified he was sexually abused by his step-father.

Additionally, the admissible portions of Ruiz's mother and sister's testimonies would've been cumulative of Ruiz's own testimony. Ruiz's mother said in her affidavit

---

[313] *See Rylander,* 101 S.W.3d at 110; *Williams,* 301 S.W.3d at 687.

[314] *Lopez,* 462 S.W.3d at 189-90 (reversing trial court's denial of motion for new trial because trial counsel was ineffective during punishment for failing to investigate and present *any* mitigating evidence) (emphasis added).

[315] *Shanklin*, 190 S.W.3d at 164 (holding "Defense counsel's failure to investigate and call *any* punishment witnesses amounts to deficient performance.") (emphasis added).

37

that Ruiz fell from an elevated porch and suffered skull fractures. She said it caused memory loss and that he had a seizure at school. She said Ruiz and her other children were victims of her ex-husband. She described her "understanding" of the charges against her ex-husband. Ruiz's mother did not say she had personal knowledge of the abuse. Her "understanding" was based on what Ruiz told her. This portion of her testimony wouldn't have been admissible at a hearing or during a trial.[316] She said Ruiz lost his innocence and that "I think" he stopped eating and is depressed. She also said Ruiz told her there's nothing left for him and that he mentioned suicide.

What Ruiz told his mother is hearsay and would not be admissible at a hearing.[317] Ruiz's sister said in her affidavit that Ruiz fell and fractured his skull. She said he has a hard time understanding instructions and is very slow. She said he must be told to do something over and over and has a bad memory. She said she thinks his hard time on probation was because of his head injury. She said Ruiz told "told me" he's had seizures within the past year. She then said Ruiz "told me" about the sexual abuse he suffered from their step-father. What Ruiz told his sister is hearsay and wouldn't be admissible at a hearing.[318]

---

[316] *See* Tex. R. Evid. 602 ("A witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter. Evidence to prove personal knowledge may consist of the witness's own testimony. This rule does not apply to a witness's expert testimony . . . ."); Tex. R. Evid. 802 (stating hearsay is not admissible); Tex. R. Evid. 801(d) (defining "hearsay" as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted").
[317] *See* Tex. R. Evid. 602; Tex. R. Evid. 801(d); Tex. R. Evid. 802.
[318] *See* Tex. R. Evid. 602; Tex. R. Evid. 801(d); Tex. R. Evid. 802.

To raise the specter of ineffective assistance of counsel, the proffered witness evidence must be more than cumulative of other evidence.[319] His mother's and sister's evidence was cumulative of his own testimony. Ruiz hasn't shown ineffective assistance of counsel.

Furthermore, Ruiz hasn't shown that the allegedly new evidence substantially differed from the evidence actually presented to the trial court.[320] The trial court already knew Ruiz fell years before and had head trauma. The court knew Ruiz was on medication for seizures and depression. The court knew Ruiz was a sexual abuse victim. Because the trial court was aware of this evidence when it sentenced Ruiz, Ruiz wasn't prejudiced by his counsel's alleged failure to investigate and present the additional mitigating evidence.[321]

Moreover, as in *Smith* and *Goody*[322] and unlike in *Shanklin*,[323] the trial court here presided over both the revocation hearing and the motion for new trial. The trial judge

---

[319] *See Holland v. State,* 761 S.W.2d 307, 319 (Tex. Crim. App. 1988); *Ketchum v. State,* 199 S.W.3d 581, 597 (Tex. App.----Corpus Christi 2006, pet. ref'd); *see also Wong v. Belmontes,* 558 U.S. 15, 22-23 (2009) (holding that cumulative mitigation evidence is unnecessary); *Coble v. Quarterman,* 496 F.3d 430, 437 (5th Cir. 2007) (refusing to find *Strickland* error when counsel presented similar mitigating evidence at trial, even if only in outline form).

[320] *See Washington v. State*, 417 S.W.3d 713, 728 (Tex. App.---Houston [14th Dist.] 2013, pet. ref'd) (quoting *Ex parte Martinez,* 195 S.W.3d 713, 731 (Tex. Crim. App. 2006) and holding that appellant didn't show that the new mitigating evidence "differ[s] in a substantial way –in strength and subject matter]] from the evidence actually presented at sentencing.").

[321] *See Washington*, 417 S.W.3d at 728 (citing *Ex parte Martinez,* 195 S.W.3d at 731 ("[S]ince the jury was privy to some of the severe abuse applicant suffered during his childhood, there is not a reasonable probability that the unadmitted alleged mitigating evidence would have tipped the scale in applicant's favor," despite the omitted mitigating evidence about his abuse being "strong.")).

[322] *See Smith*, 286 S.W.3d at 344-45; *Goody v. State*, 433 S.W.3d 74, 81 (Tex. App.---Houston [1st Dist.] 2014, pet. ref'd).

[323] *See Shanklin*, 190 S.W.3d at 157 (noting defendant convicted and sentenced by jury).

had the witness affidavits before her when she allowed the motion to be overruled.[324] As evidenced by the trial court's denial, the judge did not find the affidavits persuasive enough to alter her punishment decision.[325] The reviewing court should defer to the trial court's implied factual determination that trial counsel conducted a sufficient investigation.[326] This Court must also presume from the trial court's denial of Ruiz's motion, that the witnesses' testimony wouldn't have affected its sentencing decision.[327]

Notably, Ruiz asks this Court to abandon *Smith* in a revocation context.[328] *Smith* was decided by the Court of Criminal Appeals.[329] This Court cannot jettison binding

---

[324] C.R. 175 (the trial judge, Hon. Patricia Grady, signed Ruiz's certificate of presentment of his motion for new trial).

[325] *See Smith,* 286 S.W.3d at 345 ("[W]e presume that [the trial court] knew . . . what the appellant's testimony . . . would be, and that, even assuming any such testimony to be accurate and reliable, knew that it would not have influenced his" punishment determination); *Glenn v. State*, 01-13-00640-CR, 2015 WL 831995, at *4 (Tex. App.—Houston [1st Dist.] Feb. 26, 2015, pet. ref'd) (finding defendant didn't prove prejudice when counsel failed to discover and present medical records during adjudication hearings because same judge heard the motion for new trial); *Goody,* 433 S.W.3d at 81; *Potts v. State,* No. 14–10–01172–CR, 2012 WL 1380230, at *1 (Tex. App.---Houston [14th Dist.] Apr. 19, 2012, no pet.) (holding defendant didn't establish prejudice where same judge who sentenced defendant also considered motion for new trial and determined additional testimony would not have influenced punishment assessment); *Arriaga v. State,* 335 S.W.3d 331, 336-37 (Tex. App.---Houston [14th Dist.] 2010, pet. ref'd) (in part holding that "In the absence of a hearing on the appellant's motion for new trial, we presume that (1) the trial court knew from the motion for new trial and the affidavit what Carlos's testimony at a hearing would be; and (2) even assuming any such testimony to be accurate and reliable, the trial court knew the facts alleged in the motion would not have influenced its 'ultimate normative judgment' in assessing punishment within the statutory range. . . . Thus, the trial court could have concluded without the necessity of a hearing that the appellant suffered no prejudice from any alleged deficiency on appellant's trial counsel's part.").

[326] *See Ex parte Wheeler,* 203 S.W.3d 317, 325-26 (Tex. Crim. App. 2006).

[327] *See Smith*, 286 S.W.3d at 344-45; *Castaneda*, 01-14-00389-CR, 01-14-00390-CR, 2015 WL 6930466 *9; *Glenn*, 01-13-00640-CR, 2015 WL 831995, at *4; *Goody*, 433 S.W.3d at 81; *Potts,* No. 14–10–01172–CR, 2012 WL 1380230, at *1; *Arriaga*, 335 S.W.3d at 336-37.

[328] Ruiz brief p. 37-39.

[329] *See Smith*, 286 S.W.3d at 333.

precedent.[330] Additionally, under Ruiz's request, prejudice would be presumed. A reviewing court would have to presume the appellant's punishment would be lesser, regardless of the fact that only the trial court (who set the sentence) would know what evidence would've impacted its punishment decision. It would mean trial courts that set a defendant's punishment couldn't be trusted to know what would influence their punishment sentences.

Lastly, the trial court's decision to punish Ruiz with the maximum sentence for sexual assault of a child[331] was justified by the evidence. Ruiz pled true to 2 probation violations. The trial court found he violated 10 more. He didn't continue participating in sex offender treatment. He wasn't reporting to his probation officer. He didn't do his community service or his polygraph. He was also seeing an underage girl. And he committed a new criminal offense by failing to register as a sex offender. Plus, unlike Shanklin, Ruiz did not express remorse.[332] He did not apologize to his sister for sexually assaulting her.

## V.   *Conclusion—Ruiz Is Not Entitled To A New Punishment*

---

[330] *See Lewis v. State*, 448 S.W.3d 138, 146 (Tex. App.---Houston [14th Dist.] 2015, pet. ref'd); *see also State of Texas ex rel. Vance v. Clawson,* 465 S.W.2d 164, 168 (Tex. Crim. App. 1971) ("The Court of Criminal Appeals is the court of last resort in this state in criminal matters. This being so, no other court of this state has authority to overrule or circumvent its decisions, or disobey its mandates.").

[331] TEX. PENAL CODE §22.011(f) (sexual assault of a child is a 2nd degree felony); TEX. PENAL CODE §12.33 (2nd degree felonies are punishable from 2 years to 20 years confinement).

[332] *Shanklin*, 190 S.W.3d at 165-66 (holding appellant proved prejudice when jury heard him apologize to his victim's family, but presented no other mitigating evidence).

## *Hearing*

It was Ruiz's burden to establish his trial counsel was deficient and the deficiency prejudiced him.[333] Even if the trial court or this Court were to accept Ruiz's mother's and sister's affidavits in their entirety,[334] Ruiz hasn't met either *Strickland* prong. He hasn't shown his trial counsel was deficient. He hasn't shown his punishment would've been less severe. To find otherwise would require this Court to assume the trial court's role and substitute its decision for that of the lower court---an action this Court is forbidden from doing.[335]

Ruiz's first issue should be overruled.

---

[333] *See Strickland,* 466 U.S. at 687; *Perez,* 310 S.W.3d at 892-93; *Cannon,* 252 S.W.3d at 348-49.

[334] Ruiz argues the trial court should've heard his mother's and sister's live testimony. He argues the trial court shouldn't rely on affidavits because live testimony allows the court to weigh the witness's credibility better. Ruiz brief p. 39. This is another attempt to have the reviewing court substitute its judgment for that of the lower court. The same rebuttal argument applies. The trial court, as the fact finder who sentenced Ruiz, would know whether the proffered testimony (in whatever form) would impact its punishment decision. *See Smith,* 286 S.W.3d at 345; *Castaneda,* 01-14-00389-CR, 01-14-00390-CR, 2015 WL 6930466 *9; *Glenn,* 01-13-00640-CR, 2015 WL 831995, at *4; *Goody,* 433 S.W.3d at 81; *Potts,* No. 14–10–01172–CR, 2012 WL 1380230, at *1; *Arriaga,* 335 S.W.3d at 336-37.

[335] *See Riley,* 378 S.W.3d at 457.

**A court must hold a hearing on a motion for new trial if the motion raises matters that aren't determinable from the record and establishes reasonable grounds showing that the defendant could be entitled to relief.**

**What's the abuse of discretion in denying a new trial hearing when the record shows counsel wasn't deficient and the judge who received the motion also set the punishment? The judge knew if the affidavits would've changed her sentence.**

## ARGUMENT AND AUTHORITIES

In his second issue, Ruiz argues the trial court abused its discretion by not granting a hearing on his motion for new trial because he raised matters not determinable from the record that could entitle him to relief. Ruiz relies on his claim that he raised and proved ineffective assistance of counsel for failing to investigate and present his mother's and sister's testimonies. He contends he rebutted the presumption that trial counsel was effective and, consequently, there should've been a hearing to allow counsel to explain her trial strategy.

The trial court didn't abuse its discretion because Ruiz wasn't entitled to a hearing. Ruiz failed to raise matters that weren't determinable from the record and he failed to establish reasonable grounds showing he could potentially be entitled to relief.

## I.     *Motion For New Trial Hearing Relevant Law*

An appellate court reviews the trial court's decision on whether to hold a hearing on a defendant's motion for new trial for abuse of discretion.[336] A trial court abuses its discretion only when its decision lies outside the zone of reasonable disagreement.[337] A trial court "abuses [its] discretion in failing to hold a hearing if the motion and accompanying affidavits: (1) raise matters which are not determinable from the record and (2) establish reasonable grounds showing that the defendant could potentially be entitled to relief."[338] A trial court may base its motion for new trial ruling on sworn affidavits without live testimony.[339] "[A] hearing is not required when the matters raised in the motion for new trial are subject to being determined from the record."[340] The trial judge only abuses her discretion if the defendant meets both criteria.[341] In other words, a defendant is "not entitled to a hearing on his motion for new trial unless he establishes the existence of reasonable grounds showing that the defendant could be entitled to relief."[342]

In the context of a motion for new trial based on ineffective assistance of counsel and ineffective assistance during a punishment proceeding, a defendant is

---

[336] *Lucero v. State,* 246 S.W.3d 86, 94 (Tex. Crim. App. 2008).

[337] *Smith,* 286 S.W.3d at 339.

[338] *Hobbs v. State,* 298 S.W.3d 193, 199 (Tex. Crim. App. 2009) (citing *Smith,* 286 S.W.3d at 338).

[339] *See* TEX. R. APP. P. 21.7 ("The court may receive evidence by affidavit or otherwise."); *Holden v. State*, 201 S.W.3d 761, 763 (Tex. Crim. App. 2006); *see also Scaggs v. State,* 18 S.W.3d 277, 281 (Tex. App.---Austin 2000, pet. ref d) ("It has long been held that a trial court may decide a motion for new trial based on sworn pleadings and affidavits admitted in evidence *without* hearing oral testimony.").

[340] *Smith,* 286 S.W.3d at 338 (emphasis omitted) (quoting *Reyes v. State,* 849 S.W.2d 812, 816 (Tex. Crim. App. 1993)).

[341] *Id.*

[342] *Id.* at 339.

entitled to a hearing on the motion if he alleges sufficient facts from which the trial court could reasonably conclude that (1) counsel failed to act as a reasonably competent attorney; and (2) there's a reasonable likelihood the outcome of the trial would have been different without counsel's error.[343] When the judge who sentences the defendant also denies the defendant's hearing on a motion for new trial, the appellate court presumes that the trial judge knew whether additional testimony produced in the affidavits would've influenced her normative sentencing judgment.[344] Only the trial judge could have known what factors she took into consideration when she assessed the defendant's punishment, and only she would know how additional testimony might've impacted her assessment.[345] The trial judge may conclude, without conducting a hearing, that the appellant suffered no prejudice from any deficiency of the trial counsel with respect to the punishment.[346]

## II. *The Trial Court Did Not Abuse Its Discretion By Denying A Hearing On Ruiz's Motion For New Trial*

Here, the trial judge that revoked Ruiz's deferred community supervision and sentenced Ruiz, also signed Ruiz's certification of presentment of motion for new trial. The motion included Ruiz's mother's and sister's affidavits. The same judge set a hearing on the motion and then denied the hearing. The same judge allowed the motion to be

---

[343] *Id.* at 340-41.
[344] *Id.* at 344-45.
[345] *Id.* at 344.
[346] *Id.* at 345.

overruled by operation of law. The judge already had the opportunity to evaluate Ruiz and his trial counsel during the revocation hearing. The judge was familiar with the facts of the case. And the judge was familiar with the issues raised in the motion---ineffective assistance of counsel, investigation, and presentation of punishment mitigation evidence.

The trial court could've reasonably concluded, based on the record and witnessing counsel's performance during the revocation hearing, that counsel was not deficient.

The record reflects that trial counsel made proper objections. Indeed, she successfully kept out potentially harmful Facebook posts. She cross-examined the State's witnesses. She got both the probation officer and the sex offender compliance officer to admit they were not familiar with Ruiz's head injury. Counsel's implication being the witnesses didn't know what deficits Ruiz may have in regards to his understanding of the probation conditions. She also got the probation officer to testify Ruiz was a sexual abuse victim. And she showed that the State's witnesses didn't know Ruiz was on or needed medication.

Additionally, counsel called both Ruiz and his cousin for the defense. As discussed in response to Issue 1, unlike the defendants in *Lopez* or *Shanklin* who were totally deprived of the presentation of any mitigating evidence, Ruiz's trial counsel did present mitigation.[347] Counsel elicited testimony from Ruiz that he suffered a head

---

[347] *See Lopez,* 462 S.W.3d at 189-90; *Shanklin,* 190 S.W.3d at 164.

injury, was a victim of sexual assault, and was taking a cocktail of medications to help with seizures and depression.

Moreover, in closing arguments, counsel stressed Ruiz was sexually abused by his step-father. She argued Ruiz was forced to have sex with his sister. She reminded the court that Ruiz has mental and physical incapacities and is taking five different medications. She argued Ruiz did his best, despite not being able to live with his mother at a young age. She argued Ruiz consistently tried to find a job. She asked the trial court to give Ruiz an opportunity to redeem himself.

Furthermore, consistent with *Smith*[348] and a line of similar cases cited in response to Ruiz's first issue, the trial judge could've reasonably concluded without conducting a hearing that the affidavits didn't establish the existence of reasonable grounds showing that he could be entitled to relief.[349] The trial court could've reasonably concluded that trial counsel's alleged deficiency would not have affected her punishment decision.[350]

Ruiz failed to raise matters which were not determinable from the record and failed to establish reasonable grounds showing he could potentially be entitled to relief.[351] The trial court's decision is entitled to deference.[352] Based on the information

---

[348] The State argued in Issue 1 that this Court cannot ignore binding precedent. The State will not repeat the argument here.

[349] *See Smith,* 286 S.W.3d at 345; *Castaneda,* 01-14-00389-CR, 01-14-00390-CR, 2015 WL 6930466 *9; *Glenn,* 01-13-00640-CR, 2015 WL 831995, at *4; *Goody,* 433 S.W.3d at 81; *Potts,* No. 14–10–01172–CR, 2012 WL 1380230, at *1; *Arriaga,* 335 S.W.3d at 336-37.

[350] *See id.*

[351] *See Hobbs,* 298 S.W.3d at 199; *Smith,* 286 S.W.3d at 338.

[352] *See Holden,* 201 S.W.3d at 764.

before the trial judge, including her prior knowledge of the parties and the case, the judge did not abuse her discretion by allowing Ruiz's motion to be overruled without a hearing.[353]

---

[353] *See id.*

# CONCLUSION AND PRAYER

WHEREFORE, PREMISES CONSIDERED, the State prays that the judgment of the trial court be affirmed in all respects.

Respectfully submitted,

JACK ROADY
CRIMINAL DISTRICT ATTORNEY
GALVESTON COUNTY, TEXAS


_/s/ Rebecca Klaren_
REBECCA KLAREN
Assistant Criminal District Attorney
State Bar Number 24046225
600 59th Street, Suite 1001
Galveston, Texas 77551
Tel (409)770-6004/Fax (409)621-7952
rebecca.klaren@co.galveston.tx.us

## CERTIFICATE OF SERVICE

The undersigned Attorney for the State certifies a copy of the foregoing brief was sent via email, eFile service, or certified mail, return receipt requested, to Kyle Verret, attorney for David Ruiz, at kyle@verretlaw.com or 2029 Strand Suite 3, Galveston, Tx 77550, on December 23, 2015.

/s/ Rebecca Klaren
REBECCA KLAREN
Assistant Criminal District Attorney
Galveston County, Texas

## CERTIFICATE OF COMPLIANCE

The undersigned Attorney for the State certifies this brief is computer generated, and consists of 11,391 words.

/s/ Rebecca Klaren
REBECCA KLAREN
Assistant Criminal District Attorney
Galveston County, Texas