Opinion issued March 11, 2014



In The

# Court of Appeals

For The

# First District of Texas

_____

## NOS. 01-12-01138-CR
## 01-12-01139-CR
## 01-12-01140-CR
## 01-12-01141-CR

_____

**JEROME GOODY, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 178th District Court**
**Harris County, Texas**
**Trial Court Cause Nos. 1339911, 1339912, 1339913, and 1339914**

---

## OPINION ON REHEARING

Following the issuance of our original opinion, Jerome Goody moved for rehearing en banc. The panel withdraws our original opinion, vacates our prior

judgment, and issues this opinion on rehearing and a new judgment in their stead.

Appellant Jerome Goody pleaded guilty to an aggravated robbery charge and three aggravated assault charges, without an agreed punishment recommendation from the State.  TEX. PENAL CODE ANN. §§ 22.02, 29.03 (West 2011).  He also pleaded true to an enhancement paragraph alleging that he had been adjudged to have engaged in delinquent conduct.  The trial court ordered a pre-sentence investigation (PSI) and, after receiving the PSI report, held a punishment hearing. *See* TEX. CODE CRIM. PROC. ANN. art. 42.12, § 9 (West Supp. 2013).  The court assessed punishment at life imprisonment for the aggravated robbery charge, sixty years' imprisonment for aggravated assault against a public servant, and ten years' imprisonment for each of the two counts of aggravated assault with a deadly weapon.  Goody appeals from the trial court's denial of his motion for new trial, contending that he received ineffective assistance of counsel because (1) his counsel had a conflict of interest which compromised his representation, (2) his counsel was incompetent as a matter of law, and (3) his counsel failed to adequately investigate for mitigation evidence.  Finding no error, we affirm.

## Background

In September 2010, Jerome Goody, Charles Davis, and Jay Scott Garrison pulled into a bank parking lot in north Houston.  Goody and Davis entered the bank wearing masks and displaying handguns.  Mitchell Bettin, a sheriff's deputy

who was present at the scene, drew his handgun. Goody and Davis fired at Deputy Bettin and struck him twice in the left arm. As the robbers fled, Deputy Bettin returned fire, firing five or six shots at them through the bank's glass door.

Some hours later, Goody presented to LBJ Hospital with a gunshot wound to his leg. Following an investigation, he was indicted for aggravated robbery and aggravated assault. He also was indicted on two aggravated assault charges arising out of a June 2010 altercation with a man and a woman, Zachary Thrasher and Carol Boston, during which Goody fired a handgun at Thrasher's feet and his car.

Following guilty pleas by his co-defendants, Goody pleaded guilty to all charges without an agreement with the State as to sentencing. After the trial court assessed punishment, Goody moved for a new trial, contending that he received ineffective assistance of counsel. He appeals from the denial of his motion.

## Discussion

### I.     Standard of Review

We review a trial court's ruling on a motion for new trial under an abuse of discretion standard, reversing "only if the trial judge's opinion was clearly erroneous and arbitrary." *Riley v. State*, 378 S.W.3d 453, 457 (Tex. Crim. App. 2012). We view the evidence in the light most favorable to the trial court's ruling, must not substitute our judgment for that of the trial court, and must uphold the ruling if it was within the zone of reasonable disagreement. *Id.*; *Wead v. State*, 129

S.W.3d 126, 129 (Tex. Crim. App. 2004) (under abuse of discretion standard, appellate court must uphold trial court's ruling if within zone of reasonable disagreement). If there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous. *Riley*, 378 S.W.3d at 456–58. Thus, a trial court abuses its discretion in denying a motion for new trial only when no reasonable view of the record could support its ruling. *Id.*; *Webb v. State*, 232 S.W.3d 109, 112 (Tex. Crim. App. 2007).

## II.    Ineffective Assistance of Counsel

We evaluate claims of ineffective assistance of counsel under the analytical framework set forth in *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984). To prevail under *Strickland*, an appellant must show both that (1) counsel's performance fell below an objective standard of reasonableness and (2) but for counsel's unprofessional error, there is a reasonable probability that the result of the proceeding would have been different. *Id.*; *Vasquez v. State*, 830 S.W.2d 948, 949 (Tex. Crim. App. 1992). *Strickland* defines reasonable probability as a "probability sufficient to undermine confidence in the outcome." 466 U.S. at 694, 104 S. Ct. at 2068. In reviewing counsel's performance, we look to the totality of the representation to determine the effectiveness of counsel, indulging a strong presumption that the attorney's performance falls within the wide range of reasonable professional assistance or trial strategy. *Thompson v.*

4

*State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999). Furthermore, a claim of ineffective assistance must be firmly supported in the record. *Id.*

## A. Conflict of Interest

Goody contends that his trial counsel had a conflict of interest that affected the adequacy of his counsel. The Sixth Amendment guarantees the right to reasonably effective assistance of counsel, which includes the right to "conflict-free" representation. *See Strickland*, 466 U.S.668, at 692, 104 S. Ct. at 2064, 2067; *Cuyler v. Sullivan*, 446 U.S. 335, 348–50, 100 S. Ct. 1708, 1718–19 (1980); *see also* TEX. DISCIPLINARY RULES PROF'L CONDUCT R. 1.06(b), *reprinted in* TEX. GOV'T CODE ANN., tit. 2, subtit. G, app. A (TEX. STATE BAR R. art. X, § 9) (providing that attorney shall not represent person if representation "reasonably appears to be or become adversely limited by the lawyer's . . . responsibilities to another client or to a third person"). In the case of a conflict of interest, trial counsel renders ineffective assistance if the defendant can demonstrate (1) that trial counsel was burdened by an actual conflict of interest and (2) that the conflict actually affected the adequacy of counsel's representation. *Cuyler*, 446 U.S. at 349–50, 100 S. Ct. at 1719. If a defendant establishes both of these requirements, he need not demonstrate prejudice—the second prong of ineffective assistance claims under the usual *Strickland* standard—to obtain relief. *Id.*; *see also Banda v. State*, 890 S.W.2d 42, 60 (Tex. Crim. App. 1994) ("If appellant demonstrates [the

5

*Cuyler* requirements], then the second prong of the *Strickland* test will be met because prejudice is presumed.").

An "actual conflict of interest" exists if "counsel is required to make a choice between advancing his client's interests in a fair trial [and] advancing other interests . . . to the detriment of his client's interest." *Acosta v. State*, 233 S.W.3d 349, 355 (Tex. Crim. App. 2007) (quoting *Monreal v. State*, 947 S.W.2d 559, 564 (Tex. Crim. App. 1997)); *McKinny v. State*, 76 S.W.3d 463, 477 (Tex. App.— Houston [1st Dist.] 2002, no pet.) (citing *Ex parte Morrow*, 952 S.W.2d 530, 538 (Tex. Crim. App. 1997)). A potential conflict of interest, without more, is insufficient to reverse a conviction. *See Cuyler*, 446 U.S. at 350, 100 S. Ct. at 1719; *Ex parte Meltzer*, 180 S.W.3d 252, 256 (Tex. App.—Fort Worth 2005, no pet.) ("The showing of a potential conflict of interest does not constitute an actual conflict of interest."). Absent a showing that a potential conflict of interest became an actual conflict, we will not "speculate about a strategy an attorney might have pursued, but for the existence of a potential conflict of interest." *Routier v. State*, 112 S.W.3d 554, 585 (Tex. Crim. App. 2003).

During the motion for new trial hearing, Goody adduced evidence that his attorney, Ronald Ray, had been indicted for barratry. Goody contends that the barratry offense presents a conflict of interest that compromised Ray's representation of Goody in this case. A lawyer who employs a non-lawyer to

6

solicit business for him commits barratry. *See* Tex. Penal Code Ann. § 38.12 (West 2011). Ray employed Jeremiah Binder, purportedly a minister, to solicit business for him.

Goody cites the Second Circuit's decision in *United States v. Cancilla*, 725 F.2d 867 (2d Cir. 1984), for the proposition that an attorney who fears criminal liability may avoid mounting a vigorous defense because, by doing so, he may call attention to his own crimes. Goody points to the court's observation that "[s]uch a person cannot be wholly free from fear of what might happen if a vigorous defense should lead the prosecutor or the trial judge to inquire into his background . . . ." *Cancilla*, 725 F.2d at 869–70 (quoting *Solina v. United States*, 709 F.2d 160, 164 (2d Cir. 1983)).

In *Cancilla*, Peter Cancilla was involved in an insurance fraud scheme in which he submitted false insurance claims relating to damaged cars. *Id.* at 868. Cancilla appealed his conviction on the basis that his counsel's representation of the body shop that repaired the cars constituted a conflict of interest. *Id.* While the appeal was pending, the government discovered information suggesting that Cancilla's trial counsel had himself committed such a fraud with one of Cancilla's co-conspirators. *Id.* The court reasoned that "with the similarity of counsel's criminal activities to Cancilla's schemes and the link between them, it must have occurred to counsel that a vigorous defense might uncover evidence or prompt

7

testimony revealing his own crimes . . . ." *Id.* at 870. The court's holding that an attorney's own crimes might compromise his representation of his client was predicated on the similarity between the attorney's crimes and the defendant's crimes and they related to the same facts. *See id.*

In contrast to counsel's misconduct in *Cancilla*, Ray's criminal misconduct does not share a common factual basis with Goody's crimes such that a vigorous defense would expose Ray's misdeeds. Goody did not demonstrate that Ray's conduct actually affected the adequacy of Ray's representation. *See Cuyler*, 446 U.S. at 349–50, 100 S. Ct. at 1719. In the absence of specific allegations or evidence of an actual adverse effect on Ray's representation of Goody, the trial court was within its discretion to deny the motion for new trial; we will not speculate as to how a fear of prosecution might have affected Ray's performance. *See Routier*, 112 S.W.3d at 585.

Goody further responds that, because Ray was under indictment for barratry while he represented Goody, his license to practice law was in jeopardy, making him ineffective as a matter of law. In *Cantu v. State*, the Court of Criminal Appeals held that a layman acting as counsel is ineffective as a matter of law. 930 S.W.2d 594, 602 (Tex. Crim. App. 1996). In that case, however, the Court prescribed a different rule for suspended or disbarred counsel, holding that "[a] suspended or disbarred attorney is incompetent as a matter of law if the reasons for

8

the discipline imposed reflect so poorly upon the attorney's competence that it may reasonably be inferred that the attorney was incompetent to represent the defendant in the proceeding in question." *Id.* at 602. The court listed seven relevant factors to consider in determining whether a suspended or disbarred attorney is incompetent. *Id.* at 602-03.

Although Ray's barratry charge was pending while he represented Goody, the record does not indicate that he lacked a valid license to practice law, or that he had been suspended or disbarred. *Cantu*'s per se rule applies only to attorneys who are not properly licensed at the time of representation. As a result, we do not reach the *Cantu* factors. Because Goody has not demonstrated that the pending criminal charge actually conflicted with Ray's representation of him or that it affected his assistance as counsel, we hold that the trial court did not abuse its discretion in concluding that Goody failed to demonstrate that Ray was incompetent as a matter of law.

**B. Failure to Investigate**

Second, Goody contends that his counsel's investigation of mitigating evidence was inadequate, particularly evidence relating to Goody's developmental disability and history of mental illness.

In considering whether trial counsel conducted an adequate investigation for potential mitigating evidence, we focus on whether the investigation supporting

9

counsel's decision not to introduce mitigating evidence of Goody's background was reasonable. *See Freeman v. State*, 167 S.W.3d 114, 117 (Tex. App.—Waco 2005, no pet.) (quoting *Wiggins v. Smith*, 539 U.S. 510, 523, 123 S. Ct. 2527, 2535 (2003)). While "*Strickland* does not require counsel to investigate every conceivable line of mitigating evidence," "counsel can . . . make a reasonable decision to forego presentation of mitigating evidence [only] after evaluating available testimony and determining that it would not be helpful." *Wiggins*, 539 U.S. at 533, 123 S. Ct. at 2537; *Milburn v. State*, 15 S.W.3d 267, 270 (Tex. App.—Houston [14th Dist.] 2000, pet. ref'd). Counsel's representation is ineffective, then, if counsel failed to conduct an adequate pretrial investigation. *Wiggins*, 539 U.S. at 521, 123 S. Ct. at 2535–36; *Freeman*, 167 S.W.3d at 117.

If counsel's investigation was deficient, then a defendant must show that a reasonable probability exists that the fact-finder's assessment of punishment would have been less severe in the absence of defense counsel's deficient performance. *Rivera v. State*, 123 S.W.3d 21, 32 (Tex. App.—Houston [1st Dist.] 2003, pet. ref'd). "The likelihood of a different result must be substantial, not just conceivable." *Harrington v. Richter*, ___ U.S. ___, ___, 131 S. Ct. 770, 792 (2011). In reviewing whether the defendant satisfied this showing, we accord "almost total deference to a trial court's findings of historical fact as well as mixed questions of law and fact that turn on an evaluation of credibility and demeanor."

10

*Riley*, 378 S.W.3d at 458–59.  Further, when the trial judge presiding over a motion for new trial also presided over the trial itself, we presume that the judge knew how evidence admitted at the motion for new trial would have affected his ruling on punishment.  *See Smith v. State*, 286 S.W.3d 333, 344–45 (Tex. Crim. App. 2009).

Goody contends that his counsel was ineffective for failing to discover mitigation evidence which would have shown that he is developmentally disabled and had cognitive deficiencies which would have reduced his moral culpability at sentencing.  He suggests that if his counsel had obtained his mental health records and presented them at his punishment hearing, he would have received a reduced sentence.

We need not reach the question of whether Goody's trial counsel erred because he has not established prejudice.  The same judge who presided over Goody's punishment hearing heard his motion for new trial.  All of the documents which Goody's trial counsel purportedly should have discovered were included in the record at the motion for new trial.  Goody's appellate counsel discussed the exhibits in considerable detail at the hearing on the motion.  We presume from the trial court's denial of Goody's motion that the documents, even if discovered, would not have affected its decision on sentencing.  *See Smith*, 286 S.W.3d at 344–45.  The trial court rejected the credibility of some of the new trial

11

evidence as conflicting with other evidence heard at the punishment hearing; he concluded that none of it outweighed Goody's escalating violent criminal conduct or his gang affiliation and leadership. In short, the trial court rejected the idea that the punishment that it assessed would have been mitigated by this evidence. We hold that Goody has failed to show that he was prejudiced by his attorney's failure to produce the documents at his punishment hearing.

Goody contends alternatively that the mitigation evidence admitted at the motion for new trial hearing might have influenced plea negotiations. However, to defeat the presumption of reasonable professional assistance, any allegation of ineffectiveness must be firmly founded in the record, and the record must affirmatively demonstrate the alleged ineffectiveness. *Thompson v. State*, 9 S.W.3d 808, 813–14 (Tex. Crim. App. 1999); *Rivera v. State*, 123 S.W.3d 21, 29 (Tex. App.—Houston [1st Dist.] 2003, pet. ref'd). The record in the present case provides scant information on the plea-bargaining process, counsel's strategy at that stage in the proceedings, or counsel's awareness of Goody's mental health history. Without an adequate showing, we decline to hold that Goody's counsel was ineffective in connection with negotiating Goody's guilty plea.

## Conclusion

We hold that Goody has not carried his burden to prove ineffective assistance of counsel. We therefore affirm the judgment of the trial court.

Jane Bland
Justice

Panel consists of Chief Justice Radack and Justices Bland and Huddle.

Publish. TEX. R. APP. P. 47.4.

13