**Opinion issued November 17, 2016**



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-16-00013-CR

————————————

## EX PARTE YROOJ SHAMIM, Appellant

---

**On Appeal from the County Criminal Court at Law No. 3**
**Harris County, Texas**
**Trial Court Case No. 1822364-B**

---

## MEMORANDUM OPINION

Yrooj Shamim appeals the trial court's denial of his application for writ of habeas corpus. In two issues, Shamim argues that the trial court abused its

discretion in denying his application because (1) his trial counsel had an actual conflict of interest and (2) new evidence exonerates him.[1] We affirm.

## Background

*Shamim's Conviction*

Shamim was charged with the misdemeanor offense of assault of a family member, his wife. Shamim's father was also charged. Trial counsel represented both Shamim and his father, but the two men were not tried together. At Shamim's trial, the State offered five witnesses: three Houston Police Department (HPD) officers, the complainant, and a social worker from the Harris County District Attorney's Office.

The complainant testified through an interpreter that she is from Pakistan and came to America in 2001 after her arranged marriage to Shamim. She and Shamim have two sons. She testified that in April 2012, while she was pregnant with a third child, Shamim assaulted her. After sleeping on the couch, she woke up to prepare the children for school. When she returned home, she made breakfast for Shamim. Shamim was angry because she had called the police the day before about previous alleged abuse from her husband and in-laws.

---

[1] In a third issue, Shamim claimed the trial court abused its discretion in failing to issue findings of fact and conclusions of law. Because we ordered these filed and the trial court produced them, this issue is moot.

According to the complainant, Shamim pulled her by her hair and told her to get out of the house. He then left for work, but he returned at lunch still angry. Shamim grabbed her arm, pushed her out of her bedroom, and tried to drag her out of the house, saying he would send her to a mental asylum. Her in-laws were cursing her, and her father-in-law grabbed her head and pushed it against a wall. She locked herself in a bathroom and called 911. Although she called the police for help, the complainant testified that she was afraid to leave the house because the family had threatened to send her children to Pakistan. Most of her injuries depicted in photographs occurred on the day of the assault, but some were caused by the abuse that had occurred the day before.

The first officer on the scene, Officer P. Robles, testified that when he arrived at the home on the morning of April 16, 2012, an older man and young woman answered the door and claimed that another woman in the house was crazy and causing trouble. Officer Robles spoke to the complainant, who said that Shamim and her father-in-law had hurt her, called her names, pulled her hair, pushed her against a wall, and thrown her to the floor.

HPD Sergeant T. Anderson testified that the complainant initially would not come out of the bathroom. His impression was that the complainant needed help and had been assaulted. He saw bruises on the complainant's eye and a large

bruise and a golf-ball size knot on her forehead. The complainant asked for a female officer to view her injuries.

Officer M. Smith took photos of the complainant's injuries. She testified that the complainant wore a garment that covered her entire body and, before asking her to remove the garment to take the photographs, she could only see her hands, feet, and face. Five photos admitted into evidence depicted her injuries, including bruises with finger marks on her upper arm and bruises on her eye, cheekbone, forehead, and leg.

K. Hutchinson, a social worker for the Harris County District Attorney's Office, testified that the complainant displayed the characteristics of a battered woman. Hutchinson concluded that the complainant had been abused.

The defense called three witnesses: Shamim, his sister, and a friend. Shamim's sister, Uzma, testified that she had never had any disagreements with the complainant and that her parents had been upstairs during the entire episode and had not touched the complainant. Uzma never saw Shamim assault the complainant, and she saw no visible injuries on the complainant. Uzma believed any injuries were self-inflicted.

Shamim's co-worker, Bakht Khattak, who had known Shamim for more than 10 years, testified that he was with Shamim most of that afternoon traveling to

Baytown to fix computers. Khattak testified that Shamim acted normally all afternoon.

Shamim testified in his own defense, disputing that any assault occurred. He speculated that his wife slept on the couch because she must have been mad about something. He claimed that his wife developed anger issues after her parents died and that she must have called the police because she was angry about something. On the day in question, he woke up and "had a good chat" with his wife, and she cooked his breakfast. He asked her to give him the telephone number for the police officer she had called the night before, but she refused. When he came home for lunch, his parents were upstairs and remained there. He was surprised when the police called him later that day, and he maintained that he did not cause any of the injuries shown in the photographs.

On January 25, 2013, a jury found Shamim guilty of assault, and the trial court assessed punishment at one year's confinement in the Harris County Jail, probated for two years. Shamim filed a motion for new trial, claiming his trial counsel was ineffective because he failed to investigate, keep Shamim reasonably informed, and call a material witness at trial. During the hearing on the motion for new trial, Shamim's appellate counsel questioned his trial counsel extensively about the suggested conflict of representing both Shamim and his father, the extent of his pretrial investigation, and his failure to call as a witness Shamim's friend,

5

Sarwar Syed, who was interviewed on the scheduled trial date. Shamim's trial counsel stated he did not believe there was a conflict because both Shamim and his father adamantly maintained that no assault had occurred. Trial counsel testified that he investigated the case by meeting with his clients, reading the offense reports from the April 16 incident as well as from the incident the day before, and talking with Shamim's family. Trial counsel talked to Syed, who said he had heard the complainant recant her statement that Shamim's father had assaulted her. Counsel did not find this helpful to Shamim and decided not to call Syed as a witness. Further, trial counsel talked to the State and learned that the complainant never recanted.

Shamim's motion for new trial was denied. On appeal, this Court affirmed Shamim's conviction. *See Shamim v. State*, 443 S.W.3d 316, 328 (Tex. App.— Houston [1st Dist.] 2014, pet. ref'd).

*The Habeas Proceeding*

Almost three years after his conviction, Shamim filed an application for writ of habeas corpus, alleging that his trial counsel had a conflict of interest that denied him his Sixth Amendment right to counsel and that newly discovered evidence exonerated him. Attached to his application were five affidavits: two from Shamim's friends, one from his brother-in-law, and the last two from Shamim and

6

his father. In the first affidavit, his friend Sarwar R. Syed—who was not called as a witness in his assault trial—stated:

> On January 5th 2013 (Saturday) on or about 2:00 am I asked [the complainant] (who shortly before admitted in front of family/friend that her father in law had not beat her and she lied about the whole incident) how can we trust her when she is constantly changing her stories. She asks for forgiveness and told me that her husband is a very loving man and that he had not beaten her once. She admitted that she made false allegations to put the family into trouble for reasons unknown.

The second affidavit, with language almost identical to Sarwar Syed's, was from another friend, Syed Imran Ahmed. Ahmed recounted overhearing the complainant's alleged recantation to Syed. Shamim's brother-in-law, Muhammad Inam Khan, stated in his affidavit that, on the evening of the alleged assault, he saw no bruises on the complainant and saw the complainant run outside with a duffle bag and get into a car with a stranger. Khan further stated that some of Shamim's documents, including identification and immigration paperwork, were found to be missing, and he believed the complainant planned this incident with other people. Finally, Shamim and his father stated in their affidavits that their trial counsel had an undisclosed conflict of interest because he represented them both and that if he had only represented Shamim the verdict might have been different.

The State filed a response, contending Shamim's trial counsel did not have an actual conflict of interest and that Shamim failed to prove actual innocence by clear and convincing evidence. The State attached to its response an affidavit from the complainant in which she stated she had never recanted.

The trial court denied the application. At Shamim's request, we issued an order directing the trial court to file findings of fact and conclusions of law. The trial court concluded that Shamin failed to establish a conflict of interest or that "new evidence" established actual innocence.

## Standard of Review

When reviewing a trial court's grant or denial of habeas relief, we "review the facts in the light most favorable to the trial judge's ruling" and "uphold it absent an abuse of discretion." *Ex parte Wheeler*, 203 S.W.3d 317, 324 (Tex. Crim. App. 2006). When the trial court makes written findings and conclusions in support of its denial, we also review those for abuse of discretion. *See Ex parte Garcia*, 353 S.W.3d 785, 787–88 (Tex. Crim. App. 2011). We defer to the trial court's findings of fact that are supported by the record. *See Ex parte Amezquita*, 223 S.W.3d 363, 367 (Tex. Crim. App. 2006). We afford the same deference to the trial court's application of law to the facts if that ruling is based on the credibility or demeanor of witnesses. *See Ex parte Peterson*, 117 S.W.3d 804, 819 (Tex. Crim. App. 2003), *overruled in part on other grounds*, *Ex parte Lewis*, 219

8

S.W.3d 335, 371 (Tex. Crim. App. 2007).  If resolution turns only on application of legal standards and does not involve evaluation of credibility, we review that decision de novo.  *See id.*; *State v. Collazo*, 264 S.W.3d 121, 126 (Tex. App.— Houston [1st Dist.] 2007, pet. ref'd).

## No Actual Conflict of Interest

In his first issue, Shamim claims his trial counsel's conflict of interest denied him his Sixth Amendment right to counsel.  Shamim further contends that his trial counsel provided ineffective assistance because there was a conflict of interest in representing both Shamim and his father.  The State responds that Shamim failed to establish the existence of an actual conflict and thus, has not shown an abuse of discretion by the trial court in denying the application on this ground.

The purpose of the Sixth Amendment is to ensure that a criminal defendant receives a fair trial.  *Strickland v. Washington*, 466 U.S. 668, 689, 104 S. Ct. 2052, 2065 (1984).  The Sixth Amendment guarantee of the right to counsel "includes the right to 'conflict-free' counsel."  *Goody v. State*, 433 S.W.3d 74, 78 (Tex. App.—Houston [1st Dist.] 2014, pet. ref'd) (op. on reh'g).  Defense attorneys are ethically obligated "to avoid conflicting representations and to advise the court

promptly when a conflict of interest arises during the course of trial." *Cuyler v. Sullivan*, 446 U.S. 335, 346, 100 S. Ct. 1708, 1717 (1980).[2]

Defense counsel is in the best position both "professionally and ethically to determine when a conflict of interest exists or will probably develop in the course of a trial." *See id.* Although representation of multiple defendants may constitute ineffective assistance, representation of multiple defendants is not a per se violation of the constitutional guarantee of effective assistance. *See Holloway v. Arkansas*, 435 U.S. 475, 482, 98 S. Ct. 1173, 1178 (1978); *James v. State*, 763 S.W.2d 776, 778 (Tex. Crim. App. 1989) (en banc). Generally, a trial court may assume that either that no conflict exists despite multiple representation or the lawyer and client both knowingly accepted any conflict that may exist. *See Sullivan*, 446 U.S. at 346–47, 100 S. Ct. at 1717.

When a defendant asserts ineffective assistance based on an actual conflict of interest, the defendant must establish that an actual conflict existed and that it adversely affected the adequacy of counsel's representation. *See Sullivan*, 446 U.S. at 349–50, 100 S. Ct. at 1719; *Kegler v. State*, 16 S.W.3d 908, 912 (Tex.

---

[2] The Disciplinary Rules of Professional Conduct state that a lawyer shall not represent a person if representation involves a matter related to that of another client of the lawyer and the clients' interests are "materially and directly adverse." Tex. Rules Disciplinary P. R. 1.06(b)(1), *reprinted in* TEX. GOV'T CODE ANN., tit. 2, subtit. G, app. A-1 (West 2013). Moreover, a lawyer shall not represent a party if representation of that client may be adversely limited by the lawyer's representation of another client. *See id.* at R. 1.06(b)(2).

10

App.—Houston [14th Dist.] 2000, pet. ref'd).   Until the defendant shows "counsel actively represented conflicting interests, he has not established the constitutional predicate for his claim of ineffective assistance."  *See Sullivan*, 446 U.S. at 350, 100 S. Ct. at 1719.

The Texas Court of Criminal Appeals has held that an actual conflict of interest exists when "one defendant stands to gain significantly by counsel adducing probative evidence or advancing plausible arguments that are damaging to the cause of a co-defendant whom counsel is also representing."  *See James v. State*, 763 S.W.3d 776, 779 (Tex. Crim. App. 1989).  Stated another way, an actual conflict arises if counsel is required to make a choice between advancing one client's interests to the detriment of the other client's interest.  *Acosta v. State*, 233 S.W.3d 349, 355 (Tex. Crim. App. 2007).  "[A] potential conflict may become an actual conflict but we [may not] speculate about a strategy an attorney might have pursued . . . in the absence of some showing that the potential conflict became an actual conflict."  *Routier v. State*, 112 S.W.3d 554, 585 (Tex. Crim. App. 2003).

In *James v. State*, a case somewhat similar to this one, the defendant and co-defendant were both represented by the same attorney.  763 S.W.2d at 778.  Unlike Shamim's case, however, the defendant and his co-defendant were tried together.  *See id.* at 777.  The two defendants presented "mutually exclusive alibi defenses" and did not incriminate each other.  *Id.*  Nor did any witness testify in favor of one

11

defendant to the detriment of the other. *See id.* The trial court found no actual conflict existed. *Id.* The Court of Criminal Appeals upheld this ruling, finding that "potential, speculative conflicts of interest" never rose to the level of "actual, significant conflicts." *Id.* at 781–82. Because the defense strategy had been that neither defendant could have committed the crime and their testimony never deviated or incriminated the other defendant, the Court held that the only evidence of a conflict was the "speculative argument from appellants' counsel on appeal" regarding "the 'likelihood that the defense attorney *could have, would have and should have*' advanced evidence and arguments advantageous to each defendant but did not do so because of the multiple representation problem." *Id.* at 781 (emphasis in original).

The distinction between *James* and cases holding there was proof of an actual conflict is that potential conflicts in those cases became actual conflicts "due to the inculpatory or exculpatory nature of testimony or the strategy adopted by defense counsel in the particular case." *Id.* (citing *Ex parte Parham*, 611 S.W.2d 103 (Tex. Crim. App. 1981) (trial attorney testified actual conflict arose because he could have called one brother to testify and exculpate other brother) and *Gonzales v. State*, 605 S.W.2d 278 (Tex. Crim. App. 1980) (trial strategy to call one defendant to rebut State version of events backfired when defendant inculpated other two defendants)); *see Ex parte Acosta*, 672 S.W.2d 470 (Tex. Crim. App.

1984) (after State rested, defendant advised counsel he was guilty and co-defendant was not).

There is no proof that Shamim or his father inculpated the other or that a trial strategy backfired. Shamim claims trial counsel could have offered proof that his father was the perpetrator. But his argument fails, as it did in *James*, because it is based on what could have occurred, viewed with hindsight, without proof that an actual conflict arose. *See James*, 763 S.W.2d at 781–82. This presents only speculation and not proof of an actual conflict. *See id.*

Shamim contends that he has established the existence of an actual conflict by showing that trial counsel had to make a choice between advancing his interest or his father's interest when counsel spoke to the last-minute potential witness, Sarwar Syed. Just before trial, counsel spoke with Syed but decided not to call him as a witness because his testimony may have been viewed as detrimental to Shamim. According to trial counsel, Syed stated that the complainant had previously said Shamim's father was not involved in the assault. Such testimony may have lessened any doubt in the jury's minds that Shamim was the one who caused the complainant's injuries. After hearing this proposed testimony, trial counsel decided not to call Syed as a witness in Shamim's trial.

Shamim and his father were tried separately. This reduced the risk that any potential conflict would rise to the level of an actual conflict. As the Supreme

Court noted in a similar context, "[t]he provision of separate trials [for Shamim and his father] significantly reduced the potential for a divergence in their interests." *Sullivan*, 446 U.S. at 347, 100 S. Ct. at 1718. Even if Syed's alleged potential testimony reflected a possible conflict, it did not adversely affect counsel's performance at trial or deny Shamim a fair trial. *See Routier*, 112 S.W.3d at 585–86 (discussing cases in which actual conflicts were established through proof either that trial counsel "had to forego an effective strategy or that a strategy backfired due to an actual conflict that arose during trial."). Without other evidence that an actual conflict developed, the "[f]ailure to emphasize the culpability of one defendant over the other does not create an actual conflict." *Kegler*, 16 S.W.3d at 913.

Shamim finds support for his argument that denial of his writ was an abuse of discretion in the fact that his father's writ was granted. But his father's habeas application contained several grounds, and the trial court's order does not state on which ground it was granted. Thus, the fact that Shamim's father's application was granted does not demonstrate that an actual conflict existed.

Because Shamin has not demonstrated the existence of an actual conflict, we must apply the *Strickland* standard to determine if he has shown that his trial counsel provided ineffective assistance. *See Kegler*, 16 S.W.3d at 912. Under *Strickland*, an appellant must show that his "counsel's representation fell below an

14

objective standard of reasonableness" and that this deficient performance prejudiced the appellant. *See Strickland*, 466 U.S. at 688, 691, 104 S. Ct. at 2064, 2066–67. Trial counsel testified during the new-trial hearing that his investigation was limited to talking to Shamim, his father, other family members, and reviewing medical records, telephone records, and the State's file. He noted that Shamim had no alibi. Trial counsel testified that his strategy was to attempt to restrict evidence to events of the day of the assault so that the jury would not receive evidence of earlier accusations of assault or view this as ongoing behavior. His strategy was to have the jury focus on the one behavior charged in the indictment—that Shamim assaulted the complainant by pushing her. Even if we were to determine that trial counsel's performance was deficient—a matter we do not address—Shamim has not shown that he was prejudiced.

To show prejudice resulting from trial counsel's performance, Shamim would have to show a reasonable probability that the result of his trial would have been different. *See Hernandez v. State*, 726 S.W.2d 53, 59 (Tex. Crim. App. 1986) (en banc). Shamim contends counsel should have attempted to inculpate Shamim's father, but counsel did raise this possibility during closing argument. Even if counsel had presented evidence inculpating Shamim's father, this does not raise a reasonable probability that the result of the trial would have been different. Ample evidence supported a finding that Shamim assaulted his wife. The

complainant testified at length about Shamim assaulting her. The police officers testified to their observations at the scene and to the complainant's injuries. And, the photographic evidence corroborated the complainant's testimony. We overrule Shamim's first issue.

## No Newly-Discovered Evidence of Actual Innocence

In his next issue, Shamim argues that the trial court abused its discretion in denying habeas relief on his claim of newly-discovered evidence of actual innocence. Shamim presented three affidavits in support of this argument. Two of these affidavits were from his friends, Sarwar Syed and Syed Imran Ahmed. In their affidavits, Syed and Ahmed stated that on January 5, 2013, roughly two weeks before the trial, they heard the complainant admit that she had lied about the assault. Shamim's brother-in-law, Muhammad Imran Khan, stated in a third affidavit that, on the day after the assault, he saw no bruises on the complainant and he saw her run outside and get in the car with a stranger. Muhammad also stated that documents were discovered to be missing and, based on what he saw, he believed the complainant had planned the incident.

*No hearing required when evidence is not newly-discovered*

Shamim contends the trial court should have held a hearing to make a finding on witness credibility under *Ex parte Harmon*, 116 S.W.3d 778 (Tex. Crim. App. 2002). Although the trial court in *Harmon* held a hearing and found

16

the complainant's recantation in that case was credible, *Harmon* does not hold or state that a hearing is required in every case in which a witness claims that the complainant has recanted. *See id.* at 779. Generally, a trial court is not required to hold a hearing on a habeas application, particularly if the habeas judge presided over the applicant's trial. *See Ex parte Gonzalez*, 323 S.W.3d 557, 559–60 (Tex. App.—Waco 2010, pet. ref'd). The trial judge who denied Shamim's application for habeas relief also presided over his trial.

But an evidentiary hearing is required if an actual-innocence claim is raised and is supported by newly-discovered evidence. *See Ex parte Franklin*, 310 S.W.3d 918, 922 (Tex. App.—Beaumont 2010, no pet.). "Trial judges who are confronted with contradictory affidavits, each reciting a plausible version of the events, ought to convene an evidentiary hearing to see and hear the witnesses and then make a factual decision based on an evaluation of their credibility." *Manzi v. State*, 88 S.W.3d 240, 255 (Tex. Crim. App. 2002) (Cochran, J., concurring). The Court of Criminal Appeals has held that the credibility of newly-discovered evidence should be tested at a hearing. *See Ex parte Brown*, 205 S.W.3d 538, 546 (Tex. Crim. App. 2006) (citing *Franklin*, 72 S.W.3d at 678).

Although Shamim raises an actual-innocence claim, the evidence supporting it does not constitute newly-discovered evidence. "Newly discovered evidence" is evidence that was not known to the applicant at trial and could not have been

17

discovered with the exercise of due diligence. *Id.* at 545. The applicant "cannot rely upon evidence or facts that were available at the time of his trial, plea, or post-trial motions, such as a motion for new trial." *Id.*

The trial court could determine, without holding an evidentiary hearing, that Shamim's habeas evidence was not newly discovered. The evidence regarding trial counsel's representing both Shamim and his father was known by Shamim before trial. Additionally, the evidence about the complainant's alleged recantation in January 2013 was known before trial. Because the habeas judge had presided over the trial, she had previously heard testimony about the conflict of interest and the alleged recantation and, therefore, was able to determine without an evidentiary hearing that Shamim's habeas proof did not constitute newly-discovered evidence. Thus, no evidentiary hearing was required.

*Proof of innocence not clear and convincing*

Additionally, Shamim's three affidavits did not establish that he is actually innocent. As the State asserts, a person who has been convicted in a fair trial may not collaterally attack that conviction "without making an exceedingly persuasive case that he is actually innocent." *Brown*, 205 S.W.3d at 545. The habeas applicant making an actual-innocence claim must show "by clear and convincing evidence that, despite the evidence of guilt that supports the conviction, no reasonable juror could have found the applicant guilty in light of the new

evidence." *Id.* at 545; *see Ex parte Elizondo*, 947 S.W.2d 202, 209 (Tex. Crim. App. 1996). To determine whether Shamim met this standard, the habeas court was required to examine the habeas proof "in light of the evidence presented at trial." *Ex parte Thompson*, 153 S.W.3d 416, 417 (Tex. Crim. App. 2005). And the newly-discovered evidence "must constitute affirmative evidence of the applicant's innocence." *Franklin*, 72 S.W.3d at 678.

The affidavits Shamim presented do not clearly establish his innocence. The trial court concluded that Khan's affidavit concerning the complainant's lack of apparent injuries was not credible because it was contradicted by photographic evidence and the testimony of four trial witnesses. All three affidavits were contradicted, not only by photographic evidence, but also by the testimony of three HPD officers who observed at least some of the complainant's injuries, her agitated and fearful state, and the statements and demeanor of other members of the household. Moreover, the complainant testified to the verbal and physical abuse, and photographic evidence depicted bruises and facial swelling consistent with her testimony. She has not recanted that testimony. On the contrary, her affidavit attached to the State's response to Shamim's habeas application is consistent with her trial testimony.

Because a reasonable juror might have convicted Shamim on the basis of the photographic evidence and the complainant's testimony, notwithstanding the three

affidavits presented in the habeas application, Shamim failed to meet his heavy burden to establish actual innocence. *See Ex parte Navarijo*, 433 S.W.3d 558, 570–71 (Tex. Crim. App. 2014) (holding that inculpatory evidence of abuse distinguished case from those where habeas relief was granted on basis of recantation partly because in those cases there was no physical or medical evidence establishing abuse had actually occurred). We overrule Shamim's second issue.

## Conclusion

Shamim had the burden to show the trial court abused its discretion in denying habeas relief on the basis of an actual conflict of interest that adversely affected his trial counsel's performance or that newly discovered evidence constituted clear and convincing proof that no reasonable juror would have convicted him in light of that new evidence. We conclude that Shamim did not meet this burden. Accordingly, we affirm.


Harvey Brown
Justice


Panel consists of Justices Keyes, Brown, and Huddle.
Do not publish. TEX. R. APP. P. 47.2(b).