**Opinion issued August 27, 2024**



In The

# Court of Appeals

For The

# First District of Texas

_____

## NO. 01-23-00185-CR

_____

**ANTHONY JEROME WASHINGTON, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 174th District Court**
**Harris County, Texas**
**Trial Court Case No. 1697497**

---

## MEMORANDUM OPINION

Appellant Anthony Jerome Washington pleaded guilty to aggravated robbery.[1] The trial court subsequently assessed his punishment at five years' confinement. In his sole issue on appeal, Washington argues that the trial court erred

---

[1]    *See* TEX. PENAL CODE § 29.03.

in denying him a hearing on his motion for new trial. Because we conclude that there was no abuse of discretion by the trial court in denying the motion without a hearing, we affirm.

## Background

In October 2020, Washington, along with two accomplices, robbed Whipz car dealership. Washington was disgruntled with the manager of the dealership, Jose Feliz, because he had sold Washington's uncle an allegedly defective car prior to the incident. Washington, attempting to "straighten things out," pointed his AK-47 firearm at Feliz and demanded the keys to several vehicles. He then departed the dealership with keys to several cars, including a Maserati. Shortly after the incident, he made a social media post bragging about the robbery. The State indicted Washington on one count of felony aggravated robbery.

On June 6, 2022, Washington's case was set for trial. He appeared with his attorney, and a visiting judge was sitting by assignment. After being appointed counsel, Washington waived his right to a jury trial and pleaded guilty to the aggravated robbery charge in hopes of receiving deferred adjudication community supervision. Washington and the State did not reach an agreement regarding his sentence. The visiting judge deferred making a finding of guilt and reset the case to allow for the creation of a PSI report. Nothing in the plea paperwork addressed which judge would preside over the punishment hearing. After he signed the various

admonishments and stipulations in making his guilty plea, Washington moved for community supervision. The case was reset four times between Washington's plea and the punishment hearing in February 2023.

The elected judge of the trial court presided over the punishment hearing. During the proceedings, Washington's trial counsel stated that the visiting judge who took his plea told Washington that if he told the truth, it would "show [her] that he can do probation." Furthermore, counsel stated that it was essential to Washington's guilty plea that the visiting judge assess his punishment and her involvement was the reason he agreed to plead guilty. As a result, trial counsel expressed that Washington wished to withdraw his plea and have a trial by jury. The trial court denied the motion to withdraw the guilty plea and continued with the punishment hearing.

Trial counsel then informed the trial court that Washington's sole witness, his mother, was absent from the courtroom due to work commitments. The trial court offered to let his mother testify via Zoom, but trial counsel was unsure if she had access to Zoom. No further mention was made regarding the possibility of a Zoom hearing. Throughout the hearing, trial counsel continued to state Washington and he were not ready because their sole witness was not present to testify on Washington's behalf.

The PSI report was introduced into evidence. The report contained a thorough description of the offense and of the police's investigation, including the review of posts to Washington's social media accounts made in the immediate aftermath of the robbery. According to the interview for the pre-sentence investigation (PSI) report, Washington claimed that he never entered the building and made no mention of his firearm or the accomplices until confronted with the details of the police report. His statement to the interviewer portrayed him as a victim of the car dealership, saying things like, "They seen a young guy with a rap dream" and took advantage by selling him a vehicle that did not work properly, and he "began to see they just treated [him] like anybody they could run over. The car dealership was really not professional at all." The interviewer recorded him as stating, "I turned myself in after getting upset trying to defend my own property. I do apologize for my actions and this situated [sic] taught me a lot in life."

The PSI report further reflected that Washington had family support. He stated that he had a "great" relationship with his mother. He reported that he had one minor child and an unborn child. He, his girlfriend, and their child lived with Washington's mother and grandmother. He reported that he was employed "as a sales associate for '94 Consignment Gallery,' which is a family-owned business." The PSI report also contained four letters of recommendation setting out Washington's good qualities

and positive interactions with different members of the community. The letters variously described him as giving, reliable, and helpful.

During arguments, trial counsel asked for deferred adjudication, while the State argued that Washington failed to show signs of responsibility for the incident in the interview portion of the PSI report. The State pointed to the social media post made after the incident and to Washington's claim during the PSI interview that he was someone who seeks "risks." The State asked for Washington to receive prison time. The trial court sentenced Washington to five years of confinement, the minimum possible sentence for a first-degree felony. *See* TEX. PEN. CODE § 12.32. Washington expressed his desire to appeal and was appointed new counsel for the appellate proceedings on the same day.

Washington timely filed and presented a motion for new trial. He alleged that the plea of guilt was involuntary, and that trial counsel was ineffective at the guilt stage because Washington pled guilty under the assurance of his trial counsel that the visiting judge would preside over the punishment hearing. The final allegation by Washington was ineffective counsel at the punishment stage because trial counsel failed to secure his sole witness for testimony.

Accompanying the motion were three affidavits, one each from Washington, trial counsel, and Washington's mother. Washington's affidavit asserted facts relevant to his decision to plead guilty. And he asserted that his mother "was present

5

in court at the time of my sentencing" and was the "only witness [he] had available to testify about his character and suitability for probation." He further averred that his mother was not called to testify and that trial counsel "offered no evidence other than the presentence investigation" and "did not ask for additional time in which to locate my mother and bring her to court to testify."

Trial counsel's affidavit also averred that Washington's mother "was present" at the sentencing hearing and that he "had prepared her to testify in mitigation." Counsel stated that she "was the only witness available to testify" on issues of Washington's good character and suitability for probation, but she "left the courtroom and the sentencing hearing commenced." Trial counsel averred that he "did not file a motion for continuance nor move for a recess to secure the presence of this witness."

Washington's mother's affidavit stated that she would have testified that Washington "was calm and respectful and generally well-behaved" when he was around her and that he "was a fundamentally good person who might have on occasion gotten himself into trouble." She also would have testified that he had "worked for the family business, a resale shop, and if released on probation, could have worked there in the future." She would have testified that Washington could stay at her home "as his permanent address if placed on probation." Additionally, she asserted that she "was present in court on February 27, 2023 and willing to testify

to all these things," that she "left the courtroom before sentencing began in Mr. Washington's case," and that she "was never contacted to come back to court and give testimony."

Washington filed a proposed order for setting a hearing date on the motion for new trial, which the trial court signed with a handwritten note stating, "reserves whether or not a hearing will be necessary." The trial court denied the motion for new trial without holding a hearing. On May 19, 2023, Washington filed his first amended notice of appeal, giving notice of his intent to appeal judgement of the trial court and the denial of his motion for new trial. The trial court signed a certification of his right to appeal, stating that he could appeal as to punishment only.

## Jurisdiction

As a preliminary matter, we consider the jurisdiction of this Court to review the issues that Washington asserts on appeal. In his sole issue on appeal, Washington argues that the trial court erred in denying his motion for new trial without a hearing, and he seeks remand for a hearing on his motion. In his motion for new trial, he assert three basic arguments: (1) ineffective assistance at the plea hearing; (2) involuntariness of his guilty plea; and (3) ineffective assistance at the punishment stage. The State asserts that Washington waived his right to appeal the guilt phase of his trial and thus is barred from appealing that portion of his motion for new trial.

7

We agree that this Court may only consider the portion of Washington's appeal that pertains to his punishment.

The record here reflects that Washington appeared for a trial setting and waived his right to a jury trial and pleaded guilty to the aggravated robbery charge in hopes of receiving deferred adjudication community supervision. Washington signed a waiver of rights stating:

> In open court I consent to the oral and written stipulations of evidence in this case and to the introduction of affidavits, written statements of witnesses, and other documentary evidence. I am satisfied that the attorney representing me today in court has properly represented me and I have fully discussed this case with him.

> I understand that I have not reached an agreement with the prosecutor as to punishment. However, in exchange for the State waiving their right to a jury trial, I intend to enter a plea of guilty without an agreed recommendation of punishment from the prosecutor and request that my punishment should be set by the Judge after a pre-sentence investigation report and hearing. I understand the state reserves the right to argue for full punishment at my sentencing hearing. I waive any further time to prepare for trial to which I or my attorney may be entitled. Further, in exchange for the state giving up their right to trial, I agree to waive any right of appeal which I may have.

Washington's waiver and stipulations further stated that he "waived the right to appeal in guilt/innocence but has [the] right to appeal punishment." The trial court subsequently found in the certification of his right to appeal that he "has waived the right of appeal as to guilt/innocence only."

Although a defendant generally has the right of appeal, a valid waiver of appeal—one made voluntarily, knowingly, and intelligently—prevents a defendant

8

from appealing without the trial court's consent. *See* TEX. R. APP. P. 25.2(a)(2); *Carson v. State*, 559 S.W.3d 489, 492–94 (Tex. Crim. App. 2018) ("[A] defendant may knowingly and intelligently waive his appeal as part of a plea when consideration is given by the State, even when sentencing is not agreed upon."); *Ex parte Broadway*, 301 S.W.3d 694, 697 (Tex. Crim. App. 2009). An appeal must be dismissed if a certification showing that the defendant has the right of appeal has not been made part of the record. *See* TEX. R. APP. P. 25.2(d); *Dears v. State*, 154 S.W.3d 610, 613–15 (Tex. Crim. App. 2005) (holding that court of appeals should review clerk's record to determine whether trial court's certification is accurate).

Here, the record reflects that Washington waived his right to appeal, among other rights, in exchange for the State passing the trial setting and waiving its right to a trial by jury. Washington gained the benefit of being considered for deferred adjudication. *See* TEX. CODE CRIM. PROC. art. 1.13 (providing that defendant's waiver of jury trial requires State's consent); *id.* art. 42A.101 (providing that deferred adjudication requires plea of guilty or nolo contendere to judge). By agreeing to waive its right to a jury trial, the State gave consideration for Washington's waiver of his right to appeal. *See Ex parte Broadway*, 301 S.W.3d at 697–98 (holding that pre-sentencing waiver of appeal may be valid if bargained for); *see also Miles v. State*, No. 01-19-00047-CR, 2019 WL 3293695, at *1 (Tex. App.—Houston [1st Dist.] July 23, 2019, pet. ref'd) (memo. op., not designated for

publication) (dismissing appeal when appellant's plea documents showed appellant waived right to appeal in exchange for State's waiving right to jury trial); *Macias-Sanchez v. State*, No. 14-16-00302-CR, 2017 WL 950129, at *1 (Tex. App.—Houston [14th Dist.] Mar. 9, 2017, no pet.) (mem. op., not designated for publication) (same). Furthermore, the trial court's certification stated that Washington waived his right to appeal as to guilt/innocence. We cannot expand the trial court's consent to Washington's right to appeal beyond what is stated in the certification. *See* TEX. R. APP. P. 25.2(d).

Because Washington waived his right to appeal as to guilt/innocence, we lack jurisdiction to consider issues related to that portion of his conviction. *See Carson*, 559 S.W.3d at 494–96 (recognizing that plea-bargaining defendant's waiver of right to appeal can be valid even when agreement does not account for every event occurring after entry of guilty plea); *see also Cooper v. State*, 45 S.W.3d 77, 81 (Tex. Crim. App. 2001) (holding that voluntariness of guilty plea from plea-bargained, felony conviction may not be raised on appeal); *Whitfield v. State*, 111 S.W.3d 786, 789–90 (Tex. App.—Eastland 2003, pet. ref'd) (holding that motion for new trial may not be used to circumvent *Cooper* by appealing voluntariness of defendant's guilty plea); *Estrada v. State*, 149 S.W.3d 280, 285 (Tex. App.—Houston [1st Dist.] 2004, pet. ref'd) ("[D]enial of a motion for new trial, regardless of the ground or

grounds raised in the motion, is not appealable in a plea-bargained case without the trial court's permission.").

Thus, we consider Washington's complaint that the trial court abused its discretion in failing to hold a hearing on his motion for new trial as it relates to issues relevant to his punishment hearing and sentence.

## Right to Hearing

In his sole issue on appeal, Washington argues that the trial court abused its discretion in denying his motion for new trial without holding a hearing.

## A.    Standard of Review

While defendants have a right to file a motion for a new trial, criminal defendants do not possess an "absolute right" to a hearing on the motion. *See Hobbs v. State*, 298 S.W.3d 193, 199 (Tex. Crim. App. 2009); *Smith v. State*, 286 S.W.3d 333, 338 (Tex. Crim. App. 2009). "A hearing is *not* required when the matters raised in the motion for new trial are subject to being determined from the record." *Smith*, 286 S.W.3d at 338 (emphasis in original). The defendant must, "as a prerequisite to a hearing when the grounds in the motion are based on matters not already in the record," support the motion for new trial with one or more affidavits that set forth the factual basis for the relief sought. *Id*. at 339; *see Wallace v. State*, 106 S.W.3d 103, 108 (Tex. Crim. App. 2003). The affidavit need not establish a *prima facie* case; however, a fair reading of it must give rise to reasonable grounds in support of the

11

claim. *Smith*, 286 S.W.3d at 339; *Hamilton v. State*, 563 S.W.3d 442, 448 (Tex. App.—Houston [1st Dist.] 2018, pet. ref'd). No hearing is required if the affidavits are conclusory in nature and unsupported by facts that fail to provide the requisite notice of basis for the relief claimed. *Smith*, 286 S.W.3d at 339.

The denial of a hearing is reviewed for abuse of discretion and thus reversed only if the trial court's ruling falls outside the zone of reasonable disagreement. *Id*. Denial of a hearing "constitutes an abuse of discretion only if the motion and accompanying affidavits (1) raise matters which are not determinable from the record, and (2) establish reasonable grounds showing that the defendant could potentially be entitled to relief." *Hamilton*, 563 S.W.3d at 448. The trial court's discretion extends only to deciding the satisfaction of these two requirements; therefore, the appellate court's review is limited to the trial court's determination of whether the defendant has raised matters that are not determinable from the record and reasonable grounds showing a potential entitlement to relief. *Smith*, 286 S.W.3d at 340.

**B.    Analysis**

Here, Washington's motion and accompanying affidavits failed to raise matters that were not determinable from the record or to establish reasonable grounds showing that he would be entitled to relief. *See Hamilton*, 563 S.W.3d at 448; *Smith*, 286 S.W.3d at 340. Relevant to his punishment, Washington argued that

12

he was denied effective assistance of counsel at the punishment stage of his trial, specifically arguing that trial counsel's "failure to secure the attendance of Mr. Washington's mother at the sentencing hearing deprived Mr. Washington of the only available testimony concerning his character and suitability for a probated sentence."

The hearing record reflected that trial counsel informed the trial court that Washington's sole witness, his mother, had been present but left before the hearing started due to work commitments. The trial court offered to let his mother testify via Zoom, but trial counsel stated that he was unsure if she had access to Zoom. Although no further mention was made regarding the possibility of the mother's appearance via Zoom, trial counsel repeatedly stated that Washington was not ready for the punishment hearing because the sole witness was not present to testify on Washington's behalf. The trial court disregarded these arguments, compelled Washington to continue with the punishment hearing, and ultimately assessed his punishment.

None of the affidavits filed with Washington's motion for new trial raise matters that are undeterminable from the record. Washington's own affidavit states only that his mother "was present in court at the time of my sentencing" and "was the only witness [he] had available to testify about his character and suitability for probation." He averred that "she was not called to testify" and trial counsel "did not ask for additional time in which to locate [Washington's] mother and bring her to

court to testify." Both trial counsel's and the mother's affidavits indicate that Washington's mother was present at court on the day of sentencing but then left for unknown reasons. Thus, nothing in these affidavits introduced any matters that were not determinable from the record. None of the affidavits provide an explanation for mother's leaving court prior to testifying. None of the affidavits aver that she would have been available to testify at the time of the hearing, either in person or via Zoom. Mother's affidavit stated only that she "was never contacted to come back to court and give testimony." *See Hamilton*, 563 S.W.3d at 448 (holding that denial of hearing on motion for new trial constitutes abuse of discretion only if motion and accompanying affidavits (1) raise matters which are not determinable from the record and (2) establish reasonable grounds showing that the defendant could potentially be entitled to relief); *see also Perez v. State*, 310 S.W.3d 890, 894 (Tex. Crim. App. 2010) (stating that failure to call witness does not demonstrate ineffective assistance without showing that witness was available to testify and witness's testimony would have benefitted defendant).

Furthermore, none of the affidavits establish a potential right to relief for Washington. Mother's affidavit stated that she would have testified that Washington "was calm and respectful and generally well-behaved" when he was around her and that he "was a fundamentally good person who might have on occasion gotten himself into trouble." She also would have testified that he had "worked for the

14

family business, a resale shop, and if released on probation, could have worked there in the future." She would have testified that Washington could stay at her home "as his permanent address if placed on probation." The PSI report also contained character references and specific information regarding Washington's work history and family support. It stated that he was currently working at the family business and lived with his mother. Thus, Mother's testimony would not have provided any new, significant information to the trial court. *See Hamilton*, 563 S.W.3d at 448; *see also Goody v. State*, 433 S.W.3d 74, 81 (Tex. App.—Houston [1st Dist.] 2014, pet. ref'd) ("[W]hen the trial judge presiding over a motion for new trial also presided over the trial itself, we presume that the judge knew how evidence admitted at the motion for new trial would have affected his ruling on punishment.") (citing *Smith*, 286 S.W.3d at 344–45).

Because Washington's affidavits failed to raise matters that are not determinable from the record and to establish reasonable grounds showing a potential entitlement to relief, we cannot conclude that the trial court abused its discretion in denying his motion for new trial without a hearing. *See Hamilton*, 563 S.W.3d at 448; *Smith*, 286 S.W.3d at 340 (holding that appellate court's review is limited to trial court's determination of whether defendant has raised matters that are not determinable from record and reasonable grounds showing a potential entitlement to relief). Thus, we overrule his sole issue on appeal.

## Conclusion

We affirm the judgment of the trial court.


                                                     Richard Hightower
                                                     Justice

Panel consists of Justices Kelly, Hightower, and Guerra.

Do not publish. TEX. R. APP. P. 47.2(b).